**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| JPMORGAN CHASE BANK, N.A., | : |
| | : |
| | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : |
| - against - | : **COMPLAINT** |
| | : |
| VTB BANK, P.J.S.C., | : |
| | : |
| Defendant. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff JPMorgan Chase Bank, N.A. ("JPMorgan"), by and through its undersigned attorneys, as and for its Complaint against Defendant VTB Bank, P.J.S.C. ("VTB"), alleges, upon knowledge as to itself, and otherwise upon information and belief, as follows:

**<u>NATURE OF THE ACTION</u>**

1.      JPMorgan brings this action to hold VTB to its contractual promises, and enjoin it from continuing litigation in Russia, in violation of the parties' forum selection clause.

2.      In 2008, VTB opened a U.S. dollar correspondent bank account (the "Correspondent Account") at JPMorgan's New York branch in order to process U.S. dollar transactions through the U.S. financial system.  In doing so, VTB agreed to Account Terms with JPMorgan.  Specifically, VTB agreed that: its Correspondent Account would be governed by U.S. law; JPMorgan could freeze the account if required to comply with U.S. sanctions laws; any dispute would be adjudicated only in New York where the account is located; and any dispute over JPMorgan's actions must be brought within two years of the challenged action.

3.     These provisions became salient in February 2022, when the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") added VTB to its Specially Designated Nationals and Blocked Persons List, as part of the broad economic sanctions imposed by the United States in response to Russia's invasion of Ukraine.  As a result, all of VTB's property and interests in property in the United States or in the possession of U.S. persons like JPMorgan became blocked, meaning that it could not be accessed by VTB, or transferred, sold, or otherwise assigned to anyone without authorization from OFAC.  As required by the U.S. sanctions and permitted by the Account Terms, JPMorgan immediately transferred the balance of approximately $439 million in the Correspondent Account to a segregated, interest-bearing domestic blocked account.  U.S. law prohibits JPMorgan from transferring those assets to VTB or anyone else without a license from OFAC authorizing it do so.

4.     More than two years later, VTB sent pre-litigation demand letters demanding the return of the blocked account balance, but U.S. law still prohibits JPMorgan from paying the funds to VTB or anyone else.  Thereafter, on April 17, 2024, VTB filed suit in Russia—not in New York as the parties had agreed in the Account Terms.  The docket in Russia can be found via the following link: https://kad.arbitr.ru/Card/29083a64-77f1-45e2-b719-40a19313e83f (the "Russian Action").  JPMorgan has not been able to obtain or review the filings made by VTB as of yet, but understands that VTB has both initiated the action and moved for interim measures. Upon information and belief, the Russian Action follows through on the pre-litigation demand letters by seeking to hold JPMorgan and its affiliates liable for the failure to transfer the $439 million from the Correspondent Account, and the interim measures relate to the seizure of assets with respect to the Correspondent Account.  This action against JPMorgan, as well as against certain of its affiliates with no involvement with the Correspondent Account, directly

2

contravenes the forum selection clause governing disputes with respect to the Correspondent Account.  If successful, VTB will attempt to collect a judgment against JPMorgan's and its affiliates' assets abroad.  Because the $439 million is blocked under U.S. law, JPMorgan is prohibited, while the property remains blocked, from drawing on VTB's blocked assets.  To JPMorgan's knowledge, OFAC has, to date, not authorized either JPMorgan or any similarly situated financial institutions from recouping losses from such blocked property, even after Russian judgments have been entered against other Western banks.  Thus, JPMorgan is immediately facing a certain Russian judgment exposing its assets to seizure, without timely or assured recourse, simply because it is abiding, as it must, with U.S. law.

5.      VTB's Russian lawsuit is a blatant breach of the parties' agreement.  JPMorgan therefore seeks an anti-suit injunction preventing VTB from litigating anywhere but in New York, as the parties agreed, and seeks declaratory judgments enforcing the Account Terms.

## PARTIES

6.      JPMorgan Chase Bank, N.A. (defined above as JPMorgan) is a national banking association organized under the laws of the United States with its main office in Columbus, Ohio and offices and branches in New York.

7.      Defendant VTB Bank, P.J.S.C. (defined above as VTB) is a financial institution organized under the laws of Russia with its head office in St. Petersburg, Russia.  VTB is majority-owned by the Government of Russia.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1330(a) and § 1605(a)(1), because it is a suit against a foreign state's agency or

instrumentality.  VTB expressly waived its sovereign immunity in the Account Terms[1] (defined

below) governing the Correspondent Account.  Specifically, Section 17.7 of the Account Terms

provides:

> To the extent that the Customer [VTB] has or hereafter may acquire any immunity
> (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or
> legal process (whether from service of notice, injunction, attachment, execution or
> enforcement of any judgment or otherwise), **the Customer irrevocably waives and
> agrees not to claim such immunity** as against the Bank or its affiliates.

Ex. A § 17.7.  In addition, this action would qualify for the commercial activity exception in

Section 1605(a)(2) of the Foreign Sovereign Immunities Act ("FSIA"), *codified at* 28 U.S.C.

§ 1605(a)(2), because it is based:  (i) upon a commercial activity carried on in the United States

by VTB, namely the opening and maintenance of a U.S. correspondent account; and (ii) upon

acts taken by VTB outside of the territory of the United States in connection with that

commercial activity and having a direct effect in the United States, namely filing litigation in

Russia against JPMorgan concerning the Correspondent Account.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a),

because the parties are completely diverse and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

10.     Venue is proper in this District because the parties agreed in Section 16.3 of the

Account Terms that any dispute by VTB must be filed in New York, where the Correspondent

Account was held by JPMorgan.  Specifically, Section 16.3 provides:

> In relation to each Account, the courts of the country or state in which the branch
> of the Bank at which the Account is held shall have exclusive jurisdiction to settle
> any disputes that arise out of or are connected with the Account Terms, the
> Account Documentation and/or the Account **and the Customer agrees to submit
> to the jurisdiction of such courts**.

---

[1] Unless otherwise specified, all references to the Account Terms are to the last version in
effect in 2022.

Ex. A at ¶16.3 (emphasis added).  Venue is also proper pursuant to 28 U.S.C. § 1391 because the property that is the subject of the action is situated in New York, and VTB is subject to this Court's personal jurisdiction, as explained below.

11.     This Court has personal jurisdiction over VTB pursuant to C.P.L.R. 302(a), N.Y. General Obligations Law § 5-1402, 28 U.S.C. § 1330(b), and Sections 17.7 and 16.3 of the Account Terms.  As noted above, VTB agreed to waive any sovereign immunity "from service of notice, [or] injunction," and "agree[d] to submit to the jurisdiction of such courts" in New York, where the Correspondent Account was held. Ex. A §§ 17.7, 16.3.  To the extent necessary, VTB also has sufficient minimum contacts with the Southern District of New York by transacting business in New York, by virtue of reaching out to the United States and opening and maintaining the Correspondent Account at a U.S. bank in this District, and this action arises from those contacts.  In addition, in Section 13 of the Account Terms, VTB agreed to a special arrangement between JPMorgan and VTB for service of notice of this lawsuit, within the meaning of Section 1608(b)(1).  Specifically, Section 13 provides:

> **All** Account Statements and **notices** may be sent to the Customer by ordinary mail, courier, facsimile transmission, electronic transmission (including SWIFT communication and emails), through internet sites, or by such other means as the Customer and the Bank may agree upon from time to time, at the address of the Customer provided to the Bank.

Ex. A § 13 (emphasis added).

12.     Under Section 16.2 of the Account Terms, both parties "irrevocably waive[d] all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms, the Account Documentation or the relationship established hereby."  Ex. A § 16.2.

## FACTUAL ALLEGATIONS

### I.      VTB Opens the Correspondent Account and Agrees to the Account Terms

13.      In 2008, VTB opened a U.S. dollar correspondent bank account (defined above as the Correspondent Account) with the New York branch of JPMorgan in order to process U.S. dollar transactions through the U.S. financial system.

14.      VTB opened the Correspondent Account by signing and accepting an Account Terms Acceptance Letter on May 9, 2008.  Under the Account Terms Acceptance Letter, VTB agreed that its "signature below represents [its] receipt and acceptance of the Account Terms, and any service terms applicable to any services that [its] organization may use, as they may be amended or supplemented."

15.      Once VTB accepted the Account Terms, VTB and JPMorgan established the Correspondent Account, with an account number ending in *7557, at its branch in New York. The Correspondent Account was at all times maintained at JPMorgan's New York branch.

### II.      The Account Terms Permit JPMorgan to Freeze the Correspondent Account to Comply with U.S. Law

16.      In the Account Terms, VTB acknowledged and agreed that JPMorgan could freeze the Correspondent Account and withhold payment if required to comply with U.S. sanctions laws.

17.      Section 16.1 of the Account Terms states that "[t]he Account Terms, the relevant Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located."  Ex. A § 16.1.

18.      Section 17.10 of the Account Terms also provides that "[a]ll Instructions, whether Items, payment orders or otherwise, are subject to applicable laws, and rules, policies, operations

6

and practices of the applicable clearing or settlement systems or payment networks."  Ex. A

§ 17.10.

19.      Section 15.3 of the Account Terms provides that any amounts credited to the

Correspondent Account are payable exclusively in New York, and JPMorgan may withhold

payment if necessary to comply with applicable laws.  Specifically, Section 15.3 provides:

> Any amount standing to the credit of any Account with the Bank is payable exclusively at
> a branch in the country at which the Account is held; however, payment may be
> suspended from time to time in order to comply with any applicable law, governmental
> decree or similar order, in any jurisdiction, for the time period affecting the Bank, its
> officers, employees, affiliates, subsidiaries, agents or correspondents.

Ex. A § 15.3.

20.      Section 17.5 of the Account Terms permits JPMorgan to freeze funds to comply

with economic sanctions imposed by OFAC, and provides that JPMorgan is not obligated to

comply with any payment order that would violate those sanctions.  Furthermore, in Section

17.5, VTB agreed that it would comply with all applicable laws itself.  Specifically, Section 17.5

provides:

> The Customer shall comply with all applicable laws and the Bank's policies notified to
> the Customer.  The Bank is required to act in accordance with Bank policies, the laws of
> various jurisdictions relating to the prevention of money laundering and the
> implementation of sanctions, including economic or financial sanctions or trade
> embargoes imposed, administered or enforced from time to time by the U.S. government,
> including those administered by the Office of Foreign Assets Control of the U.S.
> Department of the Treasury or the U.S. Department of State. The Bank is not obligated to
> execute payment orders or effect any other transaction where a party to the transaction is
> a person or entity with whom the Bank is prohibited from doing business by any law
> applicable to the Bank, or in any case where compliance would, in the Bank's opinion,
> conflict with applicable law or banking practice or its own policies and procedures.
> Where the Bank does not execute a payment order or effect a transaction for such
> reasons, the Bank may take any action required by any law applicable to the Bank
> including freezing or blocking funds. Transaction screening may result in delays in the
> posting of transactions and/or funds availability. The Bank may direct the Customer to
> make changes to the activity in the Customer's Accounts, including to cease and desist
> from using the Accounts for particular types of transactions or for transactions involving
> particular parties from time to time. The Customer agrees to comply with such directions.

Ex. A § 17.5.

### III. The Account Terms Require Suit in New York and Reduce the Statute of Limitations to Two Years

21.     Section 16.3 of the Account Terms provides that any dispute relating to the

Correspondent Account must be brought in New York, where the Correspondent Account is

held.  Specifically, Section 16.3 states:

> In relation to each Account, the courts of the country or state in which the branch of the Bank at which the Account is held shall have the exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the Account Documentation and/or the Account and the Customer agrees to submit to the jurisdiction of such courts.

Ex. A § 16.3.

22.     The forum selection clause is a material term in the Account Terms, which

JPMorgan relies upon in agreeing to provide correspondent banking services to foreign financial

institutions like VTB.

23.     In addition, Section 16.2 of the Account Terms shortens the limitations period for

any dispute raised by VTB to two years from the time that JPMorgan took the challenged action:

> Any claim in connection with any Account or Service, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the event giving rise to the claim, except as prohibited by applicable law.

Ex. A § 16.2.

### IV. OFAC Sanctions VTB and Blocks the Correspondent Account

24.     On February 24, 2022, in response to Russia's invasion of Ukraine, VTB, among

others, was designated as a specially designated national under Executive Order ("E.O.") 14024

and the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587.

25.     President Biden signed E.O. 14024 on April 15, 2021, pursuant to authority granted by the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, to impose sanctions on Russia for various harmful foreign activities, including violating the territory of sovereign states.  E.O. 14024 is codified in the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587, administered by OFAC.

26.     Like all U.S. banks, JPMorgan is obligated to comply with E.O. 14024 because it is a "U.S. Person."  Section 6(e) of E.O. 14024 defines "U.S. persons" as "any United States citizen, lawful permanent resident, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States."  Under Section 2 of E.O. 14024, "U.S. persons" are prohibited from "(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and (b) the receipt of any contribution or provision of funds, goods, or services from any such person."

27.     By designating VTB under E.O. 14024, OFAC blocked all of VTB's assets in the United States or in the possession of a U.S. Person like JPMorgan, including $439,468,033.12 held in VTB's Correspondent Account.  Section 1 of E.O. 14024 states that "[a]ll" of VTB's "property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person . . . are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."

28.     Pursuant to these sanctions laws, JPMorgan restricted the funds in the Correspondent Account, transferred the balance to a blocked, interest-bearing account, and reported that action to OFAC.  The assets from the Correspondent Account remain blocked to

this day pursuant to applicable sanctions laws, and JPMorgan has no authority to release them to VTB or anyone else, absent a specific license from OFAC authorizing it to do so.

29.     VTB was immediately aware that its Correspondent Account was blocked in February 2022 when it lost access to the assets in the Correspondent Account.

## V.     VTB Breaches the Account Terms by Filing Suit in Russia

30.     More than two years after OFAC blocked VTB's Correspondent Account, VTB sent letters to JPMorgan, dated February 27, 2024 and March 15, 2024, demanding that JPMorgan, its parent JPMorgan Chase & Co., and its affiliates J.P. Morgan Capital Holdings Limited, J.P. Morgan Limited, CB "J.P. Morgan International" LLC, J.P. Morgan Chase Bank, N.A. London Branch, and J.P. Morgan International Finance Limited (collectively, the "JPM Affiliates"), transfer the full U.S. dollar balance of the Correspondent Account to VTB in Russian rubles.

31.     JPMorgan is still subject to E.O. 14024 and prohibited by OFAC sanctions from honoring VTB's demand.  Moreover, none of the JPM Affiliates have any responsibility for VTB's demand.

32.     On April 17, 2024, VTB commenced the Russian Action.

33.     The Russian Action threatens this Court's "exclusive jurisdiction" over VTB's dispute and important U.S. public policies.  Absent injunctive relief, JPMorgan will not only be forced to litigate in a forum to which it did not agree, but in one that will enter a judgment inconsistent with JPMorgan's obligations under U.S. sanctions laws, just as Russian courts have in other cases against Western banks.  VTB will then execute the $439 million judgment on JPMorgan's and its affiliates' assets in Russia and elsewhere.  Although JPMorgan holds $439 million of VTB's blocked assets, JPMorgan is prohibited by U.S. sanctions laws from accessing

those blocked assets to make itself whole.  To JPMorgan's knowledge, OFAC has not authorized JPMorgan or any similarly situated financial institutions to recoup their losses from blocked property, even where Russian judgments have already been entered against those other Western banks.  As such, VTB would be effectively shifting harm onto JPMorgan, depriving JPMorgan of $439 million indefinitely while the sanctions against VTB remain in place.  This Court should prevent VTB from engaging in self-help in flagrant disregard of its contract with JPMorgan.

## FIRST CAUSE OF ACTION

### Anti-Suit Injunction – Breach of Forum Selection Clause

34.     JPMorgan repeats and incorporates the above allegations as if set forth fully herein.

35.     As described above, VTB agreed to be bound by the Account Terms, which constitutes a valid and binding contract between VTB and JPMorgan governed by the laws of the United States and New York.

36.     JPMorgan timely and fully performed all its obligations under the Account Terms.

37.     VTB has breached the Account Terms by, among other things, commencing the Russian Action in violation of the forum selection clause in Section 16.3.

38.     In Section 16.3 of the Account Terms, VTB agreed to bring any dispute arising out of or connected with the Correspondent Account only in New York, the location of the branch where JPMorgan held the Correspondent Account.

39.     An anti-suit injunction enjoining VTB from continuing the Russian Action, and from pursuing any other litigation concerning the Correspondent Account against JPMorgan or its affiliates outside of New York, is appropriate because the parties in interest in both actions are the same, and the resolution of this case would be dispositive of the Russian litigation.  The

Russian Action threatens the jurisdiction of this Court, which the parties agreed would be the "exclusive jurisdiction" for "any disputes" concerning the Correspondent Account.  The Russian Action also threatens the strong U.S. public policies favoring enforcement of forum selection clauses, and the U.S. policies underlying U.S. sanctions against VTB and Russia.  Finally, VTB's Russian litigation is vexatious, and permitting parallel suit in both jurisdictions would result in delay, inconvenience, expense, inconsistency, and a race to judgment.

40.     If VTB is not enjoined from prosecuting the Russian Action, JPMorgan will be immediately and irreparably harmed through, among other things, the loss of its contractual right to have this dispute resolved exclusively by New York courts, an unfair foreign proceeding that will result in a judgment that is inconsistent with JPMorgan's U.S. legal obligations and the parties' agreement, and a $439 million loss that JPMorgan is prohibited from recovering from VTB's blocked assets without OFAC's authorization.

## SECOND CAUSE OF ACTION

### Declaratory Judgment – Breach of Account Terms

41.     JPMorgan repeats and incorporates the above allegations as if set forth fully herein.

42.     As described above, JPMorgan and VTB are parties to the Account Terms, which constitute a valid and binding contract governed by the laws of New York.

43.     JPMorgan timely and fully performed all of the conditions, covenants, and promises required of it under the Account Terms.

44.     VTB has breached the Account Terms by:  (i) demanding return of the blocked balance of the Correspondent Account, in violation of U.S. sanctions laws and VTB's own agreement in Section 17.5 of the Account Terms to comply with those applicable laws;

(ii) commencing suit in Russia in violation of the forum selection clause in Section 16.3; and (iii) commencing suit more than two years after OFAC blocked and JPMorgan froze the Correspondent Account, in violation of the shortened statute of limitations in Section 16.2.

45.     There is an actual, justiciable, and substantial controversy present and existing between the parties concerning their rights and obligations under the Agreement.  Despite the facts alleged above and the U.S. sanctions against VTB, VTB erroneously claims that JPMorgan is obligated to immediately return the blocked balance of the Correspondent Account to VTB and has commenced the Russian Action to collect those amounts.

46.     A judicial determination is necessary and required at this stage to adjudicate the parties' respective rights and obligations herein.

47.     A declaratory judgment would serve the useful purpose of clarifying and settling the legal relations between the parties, finalizing the controversy, and offering relief from the significant uncertainty that currently exists.  The substantial controversy between the parties regarding these issues is of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

48.     Accordingly, JPMorgan is entitled to declarations that:

a.     The Correspondent Account, all of JPMorgan's obligations regarding the Correspondent Account, and all of VTB's payment instructions are governed by U.S. federal and New York state law, pursuant to Sections 16.1 and 17.10 of the Account Terms.

b.     Any dispute that VTB has that arises out of or is connected with the Correspondent Account must be filed exclusively in New York federal or state courts, pursuant to Section 16.3 of the Account Terms.

    c.       JPMorgan was permitted to freeze VTB's Correspondent Account to comply with applicable laws, including the U.S. sanctions laws, pursuant to Sections 16.1, 17.10, 15.3, and 17.5 of the Account Terms.

    d.       JPMorgan was not obligated to comply with any payment instructions issued by VTB that would violate applicable laws, including U.S. sanctions laws, pursuant to Sections 16.1, 17.10, 15.3, and 17.5 of the Account Terms.

    e.       The parties' agreement to shorten the statute of limitations in Section 16.2 of the Account Terms is enforceable as a matter of New York law, and bars any suit by VTB against JPMorgan and its affiliates based on the blocking of the Correspondent Account, including the Russian Action, that is commenced more than two years after OFAC blocked the Correspondent Account.

## **PRAYER FOR RELIEF**

**WHEREFORE**, JPMorgan respectfully requests that this Court enter judgment in favor of JPMorgan and against VTB as follows:

A.      Determining that VTB breached the Account Terms;

B.      Enjoining VTB from pursuing any litigation outside of New York against JPMorgan or any of its affiliates related to the Correspondent Account;

C.      Declaring the parties' rights and obligations under the Account Terms, as specified in Paragraph 48 above; and

D.      Granting such other and further relief as the Court may deem just and proper.


DATED:  New York, New York
        April 18, 2024                  DAVIS POLK & WARDWELL LLP



                                By:     */s/ Michael S. Flynn*
                                        Michael S. Flynn
                                        Craig T. Cagney
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Tel.: (212) 450-4000
                                        michael.flynn@davispolk.com
                                        craig.cagney@davispolk.com

                                        *Attorneys for JPMorgan Chase Bank, N.A.*

15