UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JPMORGAN CHASE BANK, N.A.,

                          Plaintiff,

             - against -

VTB BANK, P.J.S.C.,

                     Defendant.

Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF JPMORGAN CHASE BANK, N.A.'S
MOTION FOR AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND
PRELIMINARY ANTI-SUIT INJUNCTION**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 4

    A.    VTB Opens the Correspondent Account and Agrees to the Account Terms .......... 4

    B.    The Account Terms Permit JPMorgan to Block the Correspondent Account ........................................................................................................ 5

    C.    VTB Is Sanctioned and the Correspondent Account Is Blocked ........................... 6

    D.    VTB Breaches the Account Terms by Demanding Return of the Blocked Correspondent Account and Filing an Untimely Suit in Russia ............................ 8

LEGAL STANDARD ............................................................................................... 10

ARGUMENT ........................................................................................................... 11

    A.    JPMorgan Is Likely to Succeed in Proving a Breach of the Forum Selection Clause ................................................................................................. 12

    B.    An Anti-Suit Injunction Is the Appropriate Remedy ........................................... 15

    C.    JPMorgan Has Suffered and Will Continue to Suffer Irreparable Harm Absent Immediate Injunctive Relief ................................................................... 20

    D.    JPMorgan Faces Immediate Harm Necessitating an *Ex Parte* TRO ................... 22

    E.    The Court Should Not Require Any Security ....................................................... 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE(S)</small>

*A.P. Moller-Maersk A/S v. Ocean Express Miami,*
  590 F. Supp. 2d 526 (S.D.N.Y. 2008) ................................................................... 17

*AGR Fin., L.L.C. v. Ready Staffing, Inc.,*
  99 F. Supp. 2d 399 (S.D.N.Y. 2000) ................................................................... 13

*Andino v. Fischer,*
  555 F. Supp. 2d 418 (S.D.N.Y. 2008) ................................................................. 10

*Applied Med. Distrib. Corp. v. Surgical Co. BV,*
  587 F.3d 909 (9th Cir. 2009) ...................................................................... 10, 18

*Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design Off.,*
  164 F. Supp. 2d 397 (S.D.N.Y. 2001) ................................................................. 23

*Beijing Fito Med. Co. v. Wright Med. Tech., Inc.,*
  763 F. App'x 388 (6th Cir. 2019) ................................................................. 10, 18

*Carematrix of Mass., Inc. v. Kaplan,*
  385 F. Supp. 2d 195 (S.D.N.Y. 2005) ................................................................. 13

*China Trade & Dev. Corp. v. M.V. Choong Yong,*
  837 F.2d 33 (2d Cir. 1987) .................................................. 10, 11, 15, 16, 20, 22

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30 (2d Cir. 2010) ................................................................................. 10

*Deutsche Mex. Holdings S.a.r.l. v. Accendo Banco, S.A.,*
  2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019) ...................................................... 21

*Doctor's Assocs., Inc. v. Stuart,*
  85 F.3d 975 (2d Cir. 1996) ................................................................................. 24

*Eagle v. Fred Martin Motor Co.,*
  809 N.E.2d 1161 (Ohio Ct. App. 2004) .............................................................. 14

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
  559 F.3d 110 (2d Cir. 2009) ............................................................................... 20

*Farrell Lines v. Columbus Cello-Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y. 1997), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals
    Inc.*, 161 F.3d 115 (2d Cir. 1998) (per curiam) ............................................................. 10, 18

*Ferguson v. Tabah*,
    288 F.2d 665 (2d Cir. 1961) ................................................................................................ 24

*George V Eatertainment S.A. v. Elmwood Ventures LLC*,
    2023 WL 2403618 (S.D.N.Y. Mar. 8, 2023) ....................................................................... 13

*GigSmart, Inc. v. AxleHire, Inc.*,
    226 N.E.3d 1073 (Ohio Ct. App. 2023) ............................................................................... 21

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
    922 F. Supp. 2d 435 (S.D.N.Y. 2013) .................................................................................. 10

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ................................................................................................... 20

*Greater Chautauqua Fed. Credit Union v. Marks*,
    600 F. Supp. 3d 405 (S.D.N.Y. 2022) .................................................................................. 20

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (2002) ........................................................................................................... 14

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
    441 F. Supp. 2d 552 (S.D.N.Y. 2006) .................................................................................. 16

*Int'l Fashion Prods, B.V.. v. Calvin Klein, Inc.*,
    1995 WL 92321 (S.D.N.Y. Mar. 6, 1995) .............................................. 10, 12, 16, 17, 18, 21

*Jerez v. JD Closeouts, LLC*,
    943 N.Y.S.2d 392 (Dist. Ct. 2012) ...................................................................................... 13

*J. Gallo Winery v. Andina Licores S.A*,
    446 F.3d 984 (9th Cir. 2006) ............................................................................................... 18

*Kennecorp Mortg. Brokers v. Country Club Convalescent Hosp*,
    610 N.E.2d 987 (Ohio 1993) ................................................................................................ 14

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ........................................................................................ 20, 22

*loanDepot.com, LLC v. CrossCountry Mortg., LLC*,
    2023 WL 3884032 (S.D.N.Y. June 8, 2023) ........................................................................ 24

*Local Moms Network, LLC v. Lamont*,
    2024 WL 757035 (D. Conn. Feb. 23, 2024) ......................................................................... 11

*Madden Int'l, Ltd. v. Lew Footwear Holdings Pty Ltd*,
    50 Misc. 3d 1210(A) (1st Dep't 2016) .................................................................................. 19

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
 714 F.3d 714 (2d Cir. 2013) ................................................................ 18

*MasterCard Int'l, Inc. v. Argencard Sociedad Anonima*,
 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) .................................. 16-17

*Motorola Credit Corp. v. Uzan*,
 2003 WL 56998 (S.D.N.Y. Jan. 6, 2003) ............................................. 16

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*,
 21 F.3d 24 (2d Cir. 1997) .................................................................... 13

*OKKO Bus. PE v. Lew*,
 133 F. Supp. 3d 17 (D.D.C. 2015) ......................................................... 9

*Omnistone Corp. v. Cuomo*,
 485 F. Supp. 3d 365 (E.D.N.Y. 2020) ................................................... 11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
 369 F.3d 645 (2d Cir. 2004) ................................................... 10, 15, 16

*Reuters, Ltd. v. United Press Int'l, Inc.*,
 903 F.2d 904 (2d Cir. 1990) ................................................................ 20

*Sanford L.P. v. Esselte AB*,
 2015 U.S. Dist. LEXIS 193868 (S.D.N.Y. Sep. 16, 2015) .................... 21

*Sherrod v. Mount Sinai St. Luke's*,
 168 N.Y.S.3d 95 (2d Dep't 2022) .......................................................... 13

*United States v. Moseley*,
 980 F.3d 9 (2d Cir. 2020) .................................................................... 14

*Willis v. Herriott*,
 550 F. Supp. 3d 68 (S.D.N.Y. 2021) ...................................... 12, 17, 21

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*,
 750 F. Supp. 2d 150 (D.D.C. 2010) ....................................................... 9

### STATUTES & RULES

31 C.F.R. pt. 587 (2021) ..................................................................... 7, 8

31 C.F.R. § 587.405. .................................................................................. 8

50 U.S.C. § 1701 *et seq.* ............................................................................ 6

Fed. R. Civ. P. 65(b) ................................................................................ 11

Fed. R. Civ. P. 65(c) ................................................................................ 24

FSIA § 1608(b)(1) .................................................................................... 23

## Other Authorities

*Anti-Suit Injunctions: English Court Rules on Withdrawal of Russian Proceedings in Favour of Foreign-Seated Arbitration*, Farrer & Co. (Mar. 3, 2024),
https://www.farrer.co.uk/news-and-insights/anti-suit-injunctions-english-court-rules-on-withdrawal-of-russian-proceedings-in-favour-of-foreign-seated-arbitration/ .......................... 9

John Rogerson et al., *Ask, and You Shall Receive—English Court of Appeal Grants Anti-Suit Injunction in Support of Foreign Arbitration*, White & Case (Oct. 20, 2023),
https://www.whitecase.com/insight-alert/ask-and-you-shall-receive-english-court-appeal-grants-anti-suit-injunction-support ......................................................................... 9

*UniCredit Wins Appeal on Anti-Suit Injunction in Support of Foreign-Seated Arbitration*, Latham & Watkins (Jan. 30, 2024),
https://www.lw.com/en/news/2024/01/unicredit-wins-appeal-on-anti-suit-injunction-in-support-of-foreign-seated-arbitration ...................................................................... 9

*U.S. Treasury Announces Unprecedented & Expansive Sanctions Against Russia, Imposing Swift and Severe Economic Costs*, U.S. Dep't of the Treasury, Office of Foreign Assets Control, (Feb. 24, 2022),
https://home.treasury.gov/news/press-releases/jy0608?ref=nextgenwar.info ................... 5, 19

Plaintiff JPMorgan Chase Bank, N.A. ("JPMorgan") submits this memorandum in support of its motion by order to show cause (the "Motion") for an *ex parte* temporary restraining order immediately enjoining Defendant VTB Bank, P.J.S.C. ("VTB"), a Russian bank majority owned by the Government of Russia and sanctioned by the U.S. Government,[1] to discontinue its lawsuit against JPMorgan in Russia, in blatant violation of the parties' forum selection clause, until this Motion can be adjudicated, and for a preliminary injunction extending that relief during the pendency of this action.

## PRELIMINARY STATEMENT

By letters dated February 27, 2024, and March 15, 2024, VTB demanded that JPMorgan and several of its affiliates (together with JPMorgan, the "JPMorgan Entities") return over $439 million from a sanctioned correspondent bank account held by JPMorgan's New York branch (the "Correspondent Account").  Such demand letters are a prerequisite to commencing litigation in Russia.  Earlier this week, on April 17, 2024, VTB initiated an action in the Arbitrazh court of the city of Saint-Petersburg and Leningrad region (the "Russian Action") against the JPMorgan Entities and moved for interim measures.  While the papers initiating the action are not yet available to any of the JPMorgan Entities, upon information and belief, the Russian Action follows through on the pre-litigation demand letters attempting to hold the JPMorgan Entities liable for the failure to transfer the $439 million from the Correspondent Action and the interim measures relate to the seizure of assets with respect to the Correspondent Account.[2]

---

[1] VTB waived its sovereign immunity in the parties' agreement.  *See infra* Section A.

[2] The JPMorgan Entities are attempting to obtain the filings in the Russian Action and will update the Court when they have done so, but, for the reasons discussed herein, JPMorgan's need for relief is immediate and cannot be delayed.

JPMorgan is the only JPMorgan Entity holding the Correspondent Account, but is prohibited by federal law from releasing those assets to VTB—or to any other person—because they are blocked under broad economic sanctions imposed by the United States in response to Russia's invasion of Ukraine.  The other JPMorgan Entities have no responsibility for the Correspondent Account and have been improperly joined in the Russian Action only so VTB can target their assets to satisfy any judgment.  The Russian Action is (i) in direct contravention of the contract between JPMorgan and VTB governing the Correspondent Account, and (ii) would serve to irreparably harm JPMorgan for complying with the aforementioned U.S. sanctions program.  By this motion, JPMorgan seeks a temporary restraining order ("TRO") and preliminary injunction enforcing the forum selection clause in the parties' agreement, which grants to New York state and federal courts exclusive jurisdiction over all claims by VTB concerning the Correspondent Account.

The origin of this dispute dates back to February 24, 2022, when VTB was added to the U.S. Department of Treasury's Office of Foreign Assets Control's ("OFAC") Specially Designated Nationals and Blocked Persons List, and its property and interests in property became blocked.  As required by those sanctions, JPMorgan immediately transferred the balance of approximately $439 million in the Correspondent Account to a segregated, interest-bearing domestic blocked account.  Now, more than two years after the Correspondent Account was blocked, VTB has filed the Russian Action against JPMorgan related to the Correspondent Account.  *See* Kroll Decl. Exs. B-G; *see also* Cagney Decl. Exs. A-F.  Other Russian financial institutions have filed actions in Russia against other Western banks holding funds blocked by U.S. sanctions.  VTB's intentions are apparent.  It will use that Russian Action to collect $439 million from the JPMorgan Entities' assets in Russia and abroad.  Doing so both directly

contravenes the parties' agreement with respect to the Correspondent Account, and punishes JPMorgan for its compliance with U.S. sanctions law.   Because the $439 million is blocked under U.S. law, JPMorgan is prohibited, while the property remains blocked, from drawing on VTB's blocked assets to make itself whole.   To JPMorgan's knowledge, OFAC has, to date, not authorized JPMorgan or any similarly situated financial institution to recoup such losses from Russian entities' blocked property, even though Russian judgments have already been entered against certain Western banks.   *See* Kroll Decl. Exs. B-G; *see also* Cagney Decl. Exs. A-F. Thus, JPMorgan is immediately facing a certain Russian judgment exposing its assets to seizure, without timely or assured recourse, simply because it is abiding, as it must, with U.S. law.   What is more, VTB is imposing all this irreparable harm on JPMorgan in direct and blatant breach of the parties' agreement to litigate any disputes related to the Correspondent Account in New York, which, in and of itself, imposes a well-established irreparable harm on JPMorgan.

JPMorgan accordingly brings this action to enjoin VTB from continuing the Russian Action with respect to any claims arising from or connected to the Correspondent Account.   The requirements for an anti-suit injunction are easily satisfied here.   *First*, JPMorgan is likely to succeed in proving that the Russian Action is a breach of the parties' forum selection clause. *Second*, an anti-suit injunction is the proper remedy because this case involves the same parties in interest and will be dispositive of VTB's Russian Action.   Permitting VTB to maintain its Russian Action in parallel would threaten this Court's exclusive jurisdiction and the strong U.S. policies supporting enforcement of forum selection clauses and against punishing entities like JPMorgan for complying with U.S. sanctions laws.   *Third*, JPMorgan will suffer certain and irreparable harm without an anti-suit injunction.   It is well-settled law that forcing JPMorgan to litigate in a forum other than the "exclusive jurisdiction" to which the parties agreed, on its own,

amounts to irreparable harm.  But in this case, that harm is especially egregious.  Indeed, Russian courts have granted other Russian banks relief against Western banks where those Western banks, like JPMorgan, were required to comply with sanctions laws.  Allowing the Russian Action to proceed will result in an unfair judgment enabling VTB to reclaim its blocked property from the JPMorgan Entities' own assets, while saddling JPMorgan with a $439 million loss that it cannot recover from VTB's blocked assets without authorization from OFAC.

*Finally*, the irreparable harm is immediate and warrants an *ex parte* TRO effective as soon as VTB has actual notice of it.  Once VTB learns of JPMorgan's action, it would have grounds to seek, if it is not attempting to do so already, its own anti-suit injunction from a Russian court, and could do so on an *ex parte* basis before this Court can even consider this Motion and grant a preliminary injunction.  This Court therefore should act first by issuing a TRO and preventing VTB from forcing JPMorgan to choose between forfeiting the parties' agreed-upon forum or violating a Russian anti-suit injunction simply by continuing this action.  The Court should not require JPMorgan to post any security because VTB will not be harmed by complying with its obligations under the contract.

## **BACKGROUND**

The facts relevant to this motion are set forth in the moving declaration of Craig T. Cagney, dated April 18, 2024, and the supporting declarations of Konstantin Kroll, dated April 17, 2024; Denice Richarts, dated April 5, 2024; and Donna Mainetti, dated April 8, 2024.

### A.    **VTB Opens the Correspondent Account and Agrees to the Account Terms**

JPMorgan, a national banking association formed under the laws of the United States, provides correspondent banking services to foreign financial institutions, which enables them to access the U.S. financial system and engage in U.S. dollar transactions.  In 2008, VTB opened the Correspondent Account at JPMorgan's New York branch by signing and accepting an

Account Terms Acceptance Letter, which "represent[ed] [VTB's] receipt and acceptance of the Account Terms, and any service terms applicable to any services that [VTB] may use, as they may be amended or supplemented."  Mainetti Decl. Ex. A

According to OFAC's website, VTB is the second-largest financial institution in Russia, holding nearly 20% of banking assets in Russia.  *See U.S. Treasury Announces Unprecedented & Expansive Sanctions Against Russia, Imposing Swift and Severe Economic Costs*, U.S. DEP'T OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL (Feb. 24, 2022), https://home.treasury.gov/news/press-releases/jy0608?ref=nextgenwar.info.  VTB is majority-owned by the Government of Russia, *id.*, but waived its sovereign immunity by agreeing to the Account Terms.[3]  Specifically, Section 17.7 of the Account Terms provides:

> To the extent that the Customer has or hereafter may acquire any immunity (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or legal process (whether from service of notice, injunction, attachment, execution or enforcement of any judgment or otherwise), the Customer irrevocably waives and agrees not to claim such immunity as against the Bank or its affiliates.

Mainetti Decl. Ex. C § 17.7.[4]

### B.   The Account Terms Permit JPMorgan to Block the Correspondent Account

By accepting the Account Terms, VTB acknowledged and agreed that JPMorgan could block the Correspondent Account and refuse payment if required to comply with U.S. sanctions laws.  For example, Section 16.1 states that "[t]he Account Terms, the relevant Account

---

[3] Unless otherwise specified, all references to the Account Terms are to the last effective version, amended in 2015. *See* Mainetti Decl. Ex. C.  For purposes of this motion, there is no material difference between the Account Terms in effect in 2008 and the version in effect in 2022.

[4] The Account Terms in effect in 2008 contained almost identical language waiving VTB's sovereign immunity.  *See* Mainetti Decl. Ex. B § 17.7.

Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located."  Mainetti Decl. Ex. A § 16.1.  Section 15.3 provides that any amounts credited to the Correspondent Account are payable exclusively in New York, and JPMorgan may withhold payment if necessary to comply with the applicable laws in New York.  *Id.* § 15.3.  Section 17.5 also permits JPMorgan to freeze funds to comply with U.S. sanctions laws, and provides that JPMorgan is not obligated to comply with any payment order that would violate those sanctions.  *Id.* § 17.5.

As relevant on this Motion, VTB also agreed that any dispute that it may have with JPMorgan concerning the Correspondent Account must be brought in New York where the Correspondent Account is held.  Specifically, Section 16.3 states:

> In relation to each Account, the courts of the country or state in which the branch of the Bank at which the Account is held shall have the exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the Account and the Customer agrees to submit to the jurisdiction of such courts.

*Id.* § 16.3. [5]

### C.    VTB Is Sanctioned and the Correspondent Account Is Blocked

On February 24, 2022, in response to Russia's invasion of Ukraine, OFAC designated VTB, among others, as a specially designated national under Executive Order ("E.O.") 14024 and the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587.

President Biden had signed E.O. 14024 on April 15, 2021, pursuant to authority granted by the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, to impose

---

[5] The Account Terms in effect in 2008 contained almost identical language.  *See* Mainetti Decl. Ex. B § 16.3.

sanctions on Russia for various harmful foreign activities, including violating the territory of sovereign states.  Exec. Order No. 14024, 31 C.F.R. Part 587 (2021).  The implementing regulations for E.O. 14024 are codified as the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. Part 587, which are promulgated and administered by OFAC.

Like all U.S. banks, JPMorgan is obligated to comply with E.O. 14024 because it is a "United States Person."  Section 6(e) of E.O. 14024 defines "United States persons" as "any United States citizen, lawful permanent resident, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States."  *Id.* § 6(e).  Under Section 2 of E.O. 14024, "United States persons" are prohibited from "(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and (b) the receipt of any contribution or provision of funds, goods, or services from any such person."  *Id.* § 2.

OFAC's designation of VTB blocked, by operation of law, all of VTB's assets in the United States and in the possession of U.S. Persons like JPMorgan, including the $439,468,033.12 balance of VTB's Correspondent Account.  Section 1 of E.O. 14024 states that "[a]ll" of VTB's "property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person . . . are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."  The assets in the Correspondent Account remain blocked to this day, and JPMorgan has no authority to unblock them or transfer them absent a specific license from OFAC authorizing it to do so.

**D.**     **VTB Breaches the Account Terms by Demanding Return of the Blocked Correspondent Account and Filing an Untimely Suit in Russia**

More than two years after JPMorgan blocked VTB's Correspondent Account, VTB sent letters to JPMorgan, dated February 27, 2024 and March 15, 2024, demanding that JPMorgan, its parent JPMorgan Chase & Co. and its affiliates J.P. Morgan Capital Holdings Limited, J.P. Morgan Limited, CB "J.P. Morgan International" LLC, J.P. Morgan Chase Bank, N.A. London Branch and J.P. Morgan International Finance Limited (collectively, the "JPM Affiliates"), transfer the full U.S. dollar balance of the Correspondent Account to VTB in Russian rubles.  *See* Richarts Decl. Exs. B, C.  The demand letters are a prerequisite to filing suit in Russia, and the March 2024 demand letter expressly threatened to commence suit in Russia if JPMorgan did not transfer the blocked property.  *See* Kroll Decl ¶ 8.; *see also* Richarts Decl. Ex. C.  JPMorgan is prohibited by the U.S. sanctions laws outlined above from honoring VTB's demand.  *See generally* Exec. Order. 14024, 31 C.F.R. Part 587 at § 1.   Moreover, none of the JPM Affiliates has any responsibility or liability for VTB's demand.

Nonetheless, VTB has now commenced an action in the Arbitrazh court of the city of Saint-Petersburg and Leningrad region against JPMorgan and the JPM Affiliates as previewed in VTB's demand letters demanding return of the balance of the Correspondent Account.  *See* Cagney Decl ¶ 3.  VTB's Russian Action is consistent with steps already taken by other Russian financial institutions, and endorsed by Russian courts, to obtain Russian judgments against both Western banks and their affiliates in circumstances, like this, where applicable sanctions prohibit the transfer of the funds.  *See* Kroll Decl. Exs. B-G; *see also* Cagney Decl. Exs. A-F.  But neither JPMorgan nor these other Western banks can use the Russian parties' blocked property to make themselves whole, because "[a] setoff against blocked property (including a blocked account), whether by a U.S. financial institution or other U.S. person, is a prohibited transfer" under the

U.S. sanctions laws.  31 C.F.R. § 587.405.  To JPMorgan's knowledge, OFAC has not yet authorized JPMorgan or any similarly situated Western banks to set off their losses, and historically OFAC has a "policy to license the release of blocked property only in limited circumstances, most of which do not involve commercial activity."  *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 22 (D.D.C. 2015) (quoting from OFAC's denial of a license application).  There can be no certainty that OFAC will ever authorize JPMorgan to draw on any portion of VTB's blocked assets while the sanctions remain in place.  *See, e.g.*, *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 157 (D.D.C. 2010) ("If companies knew they could recover blocked assets simply by re-paying the sanctions target by other means, OFAC's blocking authority would be severely diminished, thereby reducing the President's leverage in dealing with sanctions targets.").

Some Western banks, however, have succeeded in obtaining anti-suit injunctions from U.K. courts,[6] which have deterred other Russian parties from continuing their Russian litigation. *See* Cagney Decl. Exs. L-P.

Upon learning of VTB's Russian Action, JPMorgan filed this action and brought this Motion for a TRO and preliminary injunction requiring VTB to discontinue its Russian Action.

---

[6] *See, e.g.*, John Rogerson et al., *Ask, and You Shall Receive—English Court of Appeal Grants Anti-Suit Injunction in Support of Foreign Arbitration*, WHITE & CASE (Oct. 20, 2023), https://www.whitecase.com/insight-alert/ask-and-you-shall-receive-english-court-appeal-grants-anti-suit-injunction-support; *UniCredit Wins Appeal on Anti-Suit Injunction in Support of Foreign-Seated Arbitration*, LATHAM & WATKINS (Jan. 30, 2024); https://www.lw.com/en/news/2024/01/unicredit-wins-appeal-on-anti-suit-injunction-in-support-of-foreign-seated-arbitration; *Anti-Suit Injunctions:  English Court Rules on Withdrawal of Russian Proceedings in Favour of Foreign-Seated Arbitration*, FARRER & CO. (Mar. 3, 2024), https://www.farrer.co.uk/news-and-insights/anti-suit-injunctions-english-court-rules-on-withdrawal-of-russian-proceedings-in-favour-of-foreign-seated-arbitration/.

**LEGAL STANDARD**

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Both require a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits claim to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013) (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 651 (2d Cir. 2004). A court may require a defendant to halt foreign litigation if (1) "the parties are the same in both matters"; (2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined"; and (3) "the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum." *Id.* at 652 (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)). It is well-established that the strong U.S. public policies in favor of enforcing forum selection clauses justify an anti-suit injunction. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 130 (S.D.N.Y. 1997), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998) (per curiam); *Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.*, 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995); *accord Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 918–19 (9th Cir. 2009); *Beijing Fito Med. Co. v. Wright Med. Tech., Inc.*, 763 F. App'x 388, 399–400 (6th Cir. 2019). In addition, an injunction is appropriate when foreign litigation could result in a judgment inconsistent with "a statute of the forum that effectuates

10

important public policies." *China Trade*, 837 F.2d at 37.  "Federal Rule of Civil Procedure 65(b) gives district courts the power to grant temporary restraining orders with or without notice to the adverse party." *Local Moms Network, LLC v. Lamont*, 2024 WL 757035, at *2 (D. Conn. Feb. 23, 2024).  A TRO requires "a threat of irreparable harm that will occur immediately to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view." *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020).

## ARGUMENT

This case is a paradigmatic example of a case warranting an anti-suit injunction.  When VTB reached out to the United States to open a U.S. dollar correspondent account with a U.S. bank at its New York branch, VTB agreed that the account would be governed by U.S. law and any dispute relating to the account would be adjudicated in New York courts.  VTB's Russian Action is a flagrant breach of the parties' forum selection clause.  This Court should enjoin VTB from continuing the Russian Action with respect to any claims related to the Correspondent Account to end the threats to this Court's "exclusive jurisdiction" and the irreparable harm that the Russian Action is causing JPMorgan.  VTB is not only denying JPMorgan the benefit of its contractually agreed "exclusive" forum, but exposing JPMorgan to a $439 million Russian judgment.

The Court should grant a TRO on an *ex parte* basis because VTB may seek its own anti-suit injunction from a Russian court once it learns of JPMorgan's action and Motion.  This Court should preempt such subterfuge to protect its own jurisdiction to consider JPMorgan's Motion, and prevent VTB from burdening, if not eliminating, JPMorgan's right to access this forum.

**A.    JPMorgan Is Likely to Succeed in Proving a Breach of the Forum Selection Clause**

The Court should issue a TRO and preliminary injunction because VTB indisputably breached the parties' forum selection clause by filing suit in Russia.  "To satisfy the merits prong of the preliminary injunction test, . . . a plaintiff seeking to enforce a restrictive covenant need only show a likelihood of success on the merits of its claims that the covenants are enforceable and that the defendant breached them." *Willis v. Herriott*, 550 F. Supp. 3d 68, 104 (S.D.N.Y. 2021) (finding likelihood of success where defendant filed a claim in another forum in breach of the parties' forum selection clause); *see also Int'l Fashion Prods.*, 1995 WL 92321, at *2 (finding "probability of success on the merits of its claim that this action should be prosecuted here rather than in the Netherlands" because the "forum selection clause in the agreement underlying this action clearly specifies New York as the only appropriate forum").  JPMorgan is likely to succeed because the Account Terms contain a valid and enforceable forum selection clause requiring VTB to file suit exclusively in New York—not Russia.

VTB agreed to be bound by the Account Terms, as amended from time to time, when it signed the Account Terms Acceptance Letter on May 9, 2008, creating a binding contract between VTB and JPMorgan.  *See* Mainetti Decl. ¶ 3, Exs. A, B.  The Account Terms in effect both at the time that VTB signed the Account Terms Acceptance Letter in 2008, and the Terms in effect when the Correspondent Account was blocked in 2022, each contained essentially the same[7] forum selection clause in Section 16.3:

---

[7] The Account Terms in effect when VTB signed the Account Terms Acceptance Letter similarly provided: "In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account."  Mainetti Decl. Ex. B § 16.3.

> In relation to each Account, the courts of the country or state in
> which the branch of the Bank at which the Account is held shall
> have exclusive jurisdiction to settle any disputes that arise out of or
> are connected with the Account Terms, the relevant Account
> Documentation and/or the relevant Account and the Customer
> agrees to submit to the jurisdiction of such courts.

Mainetti Decl. Ex. C § 16.3.  The "forum selection clause is presumed to be valid and the [party]

'who brought suit in a forum other than the one designated by the forum selection clause' must

'make a strong showing in order to overcome the presumption of enforceability.'"[8]  *Carematrix*

*of Mass., Inc. v. Kaplan*, 385 F. Supp. 2d 195, 197 (S.D.N.Y. 2005) (quoting *New Moon*

*Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)); *see also Sherrod*

*v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 99 (2d Dept. 2022) ("a forum selection clause

contained in a contract is prima facie valid and enforceable . . . with respect to the parties to that

contract."); *Jerez v. JD Closeouts, LLC*, 943 N.Y.S.2d 392, 398 (Dist. Ct. 2012) ("this court

reiterates that forum selection clauses are prima facie valid when a party can show that the clause

was incorporated into the parties' contract.").

VTB breached that provision by filing the Russian Action to seek return of the

Correspondent Account balance, as previewed in VTB's demand letters.  The Account Terms are

"governed by and construed in accordance with the laws of the country in which the branch

---

[8] JPMorgan terminated all its agreements with VTB effective August 15, 2022, following
the imposition of the OFAC sanctions, but the Account Terms provide that "such closing or
termination shall not affect the Customer's liabilities to the Bank arising prior to, or on, such
closing or termination, all of which shall continue in full force and effect."  Mainetti Decl. Ex. C
§ 14.  Courts routinely enforce forum selection clauses after termination of the underlying
contract when the "gist" of the dispute arises under the contract.  *See George V Eatertainment
S.A. v. Elmwood Ventures LLC*, 2023 WL 2403618, at *8 (S.D.N.Y. Mar. 8, 2023) ("Courts in
the Second Circuit routinely enforce forum-selection clauses after the termination of an
agreement, even where the agreement—like here—does not contain a general, standalone
survival clause."); *AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y.
2000) (stating that "[e]ven if the Agreement was terminated, its forum selection clause would
still be effective" because the "gist" of the plaintiff's claim involved the parties' agreement.).

holding the relevant Account is located," Mainetti Decl. Ex. C § 16.1, which is and always has

been JPMorgan's New York branch.[9]  *See id.* ¶ 4.  Under New York law, the "fundamental,

neutral precept of contract interpretation . . . that agreements are construed in accord with the

parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what

they say in their writing."  *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2000).  Here, the

forum selection clause makes "the courts of the country or state in which the branch of the Bank

at which the Account is held" the "***exclusive jurisdiction***" for "any disputes that arise out of or

are connected with the Account Terms, the relevant Account Documentation and/or the relevant

Account."  *Id.* § 16.3 (emphasis added).  VTB's Correspondent Account was always held at

JPMorgan's New York branch, and therefore New York federal and state courts were the venue

chosen by the parties as the "exclusive jurisdiction" for any disputes "arising out of" or

"connected with" that account.  That broad language easily includes VTB's claims in the Russian

Action related to the balance of the Correspondent Account.  Accordingly, VTB was required to

file that action in New York courts, and it breached the contract by filing in Russia instead.

---

[9] Although the Account Terms only specify "the laws of the country," but not which state, New York law should apply as the law of the jurisdiction "in which the branch holding the relevant Account is located."  Mainetti Decl. Ex. C § 16.1.  New York law also applies under New York's "'center of gravity' approach to choice-of-law issues" as "the place which has the most significant contacts with the matter in dispute." *United States v. Moseley*, 980 F.3d 9, 23 (2d Cir. 2020).

The Account Terms in effect when VTB signed the Account Terms Acceptance Letter provided that U.S. accounts would be governed by Ohio law.  *See* Mainetti Decl. Ex. B § 16.3. For purposes of this motion, there are no material differences between Ohio and New York law. *See Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1173 (Ohio Ct. App. 2004) ("Generally, the language of a contract is to be construed in accordance with its plain and ordinary meaning."); *Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987, 989 (Ohio 1993) (holding that "a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust").

VTB's claims seeking to hold the JPM Affiliates liable for the account balance also breach the forum selection clause. The forum selection clause provides that "[t]his section is for the benefit of the Bank," and the "Bank" is defined under the Account Terms as "JPMorgan Chase Bank, N.A., and any of its affiliates." *Id.* at Introduction, § 16.3; *see also id.* § 17.2 ("The term Bank shall include any successors of the Bank, including assignees or successors of JPMorgan Chase Bank, N.A. or its affiliates or any person who has assumed the rights and obligations of the Bank or its affiliates hereunder or to which the same has been transferred."). Accordingly, VTB was required to bring "any disputes" related to the Correspondent Account, including any against the JPM Affiliates, in New York courts. Its failure to do so is also a breach of the parties' contract.

### B. An Anti-Suit Injunction Is the Appropriate Remedy

JPMorgan is likely to succeed in obtaining an anti-suit injunction as its remedy for VTB's breach. To determine whether to enjoin foreign litigation, the courts in the Second Circuit have adopted a two-step analysis. As a threshold matter, the parties must be the same in both matters, and resolution of the case before the enjoining court must be dispositive of the action to be enjoined. *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 652; *China Trade*, 837 F.2d at 35. If these two threshold requirements are satisfied, the Court may enjoin the foreign litigation based on a consideration of several factors: "(1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." *China Trade*, 837 F.2d at 35. While some of these factors are always present when there is parallel foreign litigation, the Second Circuit has held that an anti-suit injunction is justified in two types of cases: "cases in

which the foreign action threatens the enjoining court's jurisdiction, and cases in which the public policies of the enjoining forum are threatened by the foreign action." *Int'l Fashion Prods.*, 1995 WL 92321, at *2. These requirements are all satisfied here.

*First*, both this action and all claims related to the Correspondent Account in VTB's Russian Action concern the same two parties in interest: JPMorgan and VTB. VTB's inappropriate joinder of the JPM Affiliates in the Russian Action, in a meritless attempt to hold them liable for the Correspondent Account held only by JPMorgan, does not change the analysis. For example, in *Paramedics Electromedicina Comercial, Ltda*, the Second Circuit rejected a defendant's argument that the parties were different, because it had only sued the plaintiff's affiliate in the foreign litigation. 369 F.3d at 652. The Second Circuit held that "the parties to the two actions are . . . sufficiently similar to satisfy the first threshold requirement of *China Trade*," because the "claims against the [affiliate] . . . rest chiefly (if not completely) on its affiliation with" the plaintiff. *Id.* The same is true here: VTB has joined the JPM Affiliates only because they are affiliates that might have assets in Russia, not because they have any actual responsibility for the Correspondent Account. *See also Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) ("Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met."); *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (finding sufficient similarity between parties, even though not all parties to the two actions were identical, because "the real parties in interest are the same in both matters"); *MasterCard Int'l, Inc. v. Argencard S.A.*, 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2002) (finding "sufficient[] similar[ity]" between parties despite intervention

in foreign action by one party's controlling shareholder, which was "not a necessary party to that action").

*Second*, the resolution of JPMorgan's action before this Court would be dispositive of the claims related to the Correspondent Account in the Russian Action, because both concern JPMorgan's obligations to return the balance of the Correspondent Account to VTB.  In this action, JPMorgan seeks not only an anti-suit injunction for VTB's breach of the forum selection clause, but declaratory judgments enforcing the Account Terms providing that: (i) JPMorgan's obligations are governed by U.S. law; (ii) JPMorgan is permitted to block VTB's account to comply with OFAC sanctions; (iii) JPMorgan is not obligated to comply with payment instructions that would violate U.S. laws; and (iv) VTB was obligated to bring any challenge to the blocking within two years after the challenged action occurred in February 2022.  *See* Compl. ¶ 48.   This action therefore will be dispositive of claims related to the Correspondent Account in the Russian Action.  *See A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F. Supp. 2d 526, 533 (S.D.N.Y. 2008) (finding that the action before the enjoining court was dispositive of the parallel foreign actions where the parties and the issues being adjudicated were the same); *Int'l Fashion Prods.*, 1995 WL 92321, at *2 (same).

*Finally*, VTB's Russian Action threatens this Court's jurisdiction and important U.S. public policies against punishing entities like JPMorgan for compliance with mandatory U.S. sanctions law.  Most fundamentally, VTB's Russian Action undermines this Court's "exclusive jurisdiction" over that dispute, Mainetti Decl. Ex. § 16.3, and violates the strong U.S. and New York public policies in favor of enforcing forum selection clauses.  *Willis*, 550 F. Supp. 3d 68 at 98 (concluding "public interest and balance of equities favor" anti-suit injunction because "[a]s a matter of both federal law and New York law, there is a strong public policy of enforcing forum-

selection clauses"); *Farrell Lines Inc.*, 32 F. Supp. 2d at 130 (enjoining Italian lawsuit because, "[w]hether or not defendants are correct about the enforceability of the forum selection clause under Italian law, it is clear that they seek to evade an important [U.S.] public policy" of enforcing such clauses), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998) (per curiam) (affirming "[f]or substantially the same reasons as those stated by the district court in its thoughtful and well-reasoned Opinion and Order"); *Int'l Fashion Prods.*, 1995 WL 92321, at *2 (issuing anti-suit injunction against foreign suit that "violates New York's public policy . . . of enforcing forum selection agreements"); *see also Beijing Fito Med. Co.*, 763 F. App'x 388, at 400 (listing precedents "recogniz[ing] the important national policy interest in enforcing forum selection clauses" and affirming anti-suit injunction).

Forum selection clauses "enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price." *Applied Med.,* 587 F.3d at 918–19 (quoting *J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006)); *see also Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 722 (2d Cir. 2013) (explaining benefits of forum selection clauses and how they "further vital interests of the justice system").  As the Ninth Circuit explained in reversing a district court's denial of an anti-suit injunction, "anti-suit injunctions may be the only viable way to effectuate valid forum selection clauses," and "without the availability of anti-suit injunctions, the vitality of forum selection clauses would be impermissibly and improvidently jeopardized."  *Applied Med.*, 587 F.3d at 919.

Such is the case here, where VTB seeks to obtain a judgment in Russia that would be contrary to the parties' agreement and U.S. law, so that it can indirectly take back its blocked property by seizing the JPM Entities' own assets.  Without an anti-suit injunction enforcing the

forum selection clause, VTB's Russian Action would "eviscerate[] this essential contractual right" and subject JPMorgan to "unforeseen liability" in a Russian court—a forum to which it never agreed—and "potential damages unavailable under New York law." *Madden Int'l, Ltd. v. Lew Footwear Holdings Pty Ltd*, 50 Misc.3d 1210(A), at *5 (1st Dep't 2016).

While these policies alone are sufficient reason to hold VTB to the forum selection clause in its agreement, it cannot be ignored that VTB's Russian Action would also punish JPMorgan for its compliance with mandatory U.S sanctions law.

JPMorgan cannot release the assets in question because those assets are blocked by operation of law under E.O. 14024 and the Russian Harmful Foreign Activities Sanctions Regulations.  E.O. 14024 states that the President authorized sanctions because "specified harmful foreign activities of the Government of the Russian Federation . . . constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States."  In the press release announcing its designation of VTB under E.O. 14024, OFAC explained that it was blocking VTB's assets to "send[ ] an unmistakable signal that the United States is following through on its promise of delivering severe economic costs" against Russia for its invasion of Ukraine.[10]  As a U.S. bank, JPMorgan has no choice but to comply with these regulations concerning the U.S. dollar account that VTB voluntarily opened at JPMorgan's New York branch.  By filing suit in Russia, not New York, VTB seeks to punish JPMorgan for compliance with U.S. law because Russian courts have not been recognizing U.S. sanctions as a defense to demands for return of blocked property.  If VTB succeeds in obtaining a Russian

---

[10] *U.S. Treasury Announces Unprecedented & Expansive Sanctions Against Russia, Imposing Swift and Severe Economic Costs,* U.S. DEP'T OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL (Feb. 24, 2022), https://home.treasury.gov/news/press-releases/jy0608?ref=nextgenwar.info.

judgment against JPMorgan and collecting it against the JPMorgan Entities' assets in Russia, it

will be punishing JPMorgan for its compliance with mandatory U.S. sanctions law.  The threat

that VTB's litigation poses to the U.S. policies against punishing entities like JPMorgan simply

for complying with U.S. sanctions law provides additional reason to enjoin VTB from continuing

its Russian Action.  *See China Trade*, 837 F.2d at 37; *Laker Airways*, 731 F.2d at 931 n.73.

     C.     **JPMorgan Has Suffered and Will Continue to Suffer Irreparable Harm Absent Immediate Injunctive Relief**

While JPMorgan is likely to prevail on the ultimate merits of this suit, interim relief is

necessary to stop the irreparable harm caused by VTB's Russian Action.  "[A] showing of

irreparable harm is 'the single most important prerequisite for the issuance' of injunctive relief."

*Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 431 (S.D.N.Y. 2022)

(quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  To

meet that requirement, the movant "must demonstrate that absent a preliminary injunction, they

will suffer an injury that is neither remote nor speculative, but actual and imminent."  *Id.* (citing

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  "[T]he alleged

injury must be one incapable of being fully remedied by monetary damages."  *Reuters, Ltd. v.*

*United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

In this case, the irreparable harm is JPMorgan's loss of the "exclusive" contractually-

agreed New York forum for this dispute.  New York courts have consistently held that an action

filed in breach of a forum selection clause causes irreparable harm that justifies injunctive relief.

For example, in *Willis*, a company filed suit against its former employee in New York, the

contractually agreed forum for alleged breaches of his employment agreement, but two days

later, the former employee filed his own action in California.  A court in this District granted a

preliminary injunction barring the defendant from prosecuting the California action without requiring any further proof of harm:

> New York courts have repeatedly held that a party's contractual right to resolve disputes in its bargained-for forum cannot be vindicated if the party is forced to litigate on two fronts with a risk of inconsistent rulings.  Put differently, if litigation is permitted to proceed in a second forum, the benefit of a forum selection clause is irreparably lost.  It follows that "dragging" Plaintiffs into litigation in a court other than the court for which they bargained constitutes irreparable harm.

550 F. Supp. 3d at 97–98 (citing *Sanford L.P. v. Esselte AB*, 2015 U.S. Dist. LEXIS 193868, at *6-8 (S.D.N.Y. Sep. 16, 2015)).  Numerous courts in this District have reached the same conclusion concerning foreign litigation.  *See Deutsche Mex. Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019) (enjoining defendant to withdraw Mexican litigation because "it is undeniable that dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the Purchase Agreement constitutes irreparable harm"); *Int'l Fashion Prods.,* 1995 WL 92321, at *2 (defendant "would suffer irreparable harm by being forced to" litigate in another forum when "the agreement at issue clearly states that New York is the chosen forum for all disputes").[11]  VTB's maintenance of the Russian Action alone, therefore, constitutes irreparable harm meriting injunctive relief.

Indeed, in the absence of injunctive relief, JPMorgan will be forced to litigate in a forum to which it did not agree.  Moreover, as mentioned, Russian courts have in other cases against Western banks granted relief against Western banks, notwithstanding that they, like JPMorgan here, cannot transfer the funds in question.  *See* Kroll Decl. Exs. B-G; *see also* Cagney Decl. Exs. A-F.  Moreover, Russian courts will ignore the separate legal status of the JPM Affiliates,

---

[11] *See also GigSmart, Inc. v. AxleHire, Inc.*, 226 N.E.3d 1073, 1091 (Ohio Ct. App. 2023) (finding that action filed in violation of forum selection clause caused irreparable harm and granting preliminary anti-suit injunction).

and hold them liable for the blocked Correspondent Account held exclusively by JPMorgan. *See* Kroll Decl. ¶ 7; *see also* Cagney Decl. ¶ 5. VTB will then seize any of the JPMorgan Entities' assets in Russia that it can to satisfy the judgment in Russia. *See* Kroll Decl. ¶¶ 7-8. There can be no assurances that any Russian judgment would be limited to the value of the Correspondent Account and would not include any other alleged damages. But even if VTB only seizes an amount equivalent to the blocked funds that JPMorgan holds, JPMorgan is still prohibited under U.S. sanctions laws from accessing those blocked funds, and OFAC has not authorized JPMorgan or any similarly situated financial institutions to recoup their losses from such blocked property. As such, VTB would be depriving JPMorgan of $439 million indefinitely while the sanctions against VTB remain in place. This Court should prevent VTB from engaging in self-help in flagrant disregard of its contract with JPMorgan. Indeed, the Second Circuit has recognized that an anti-suit injunction may be appropriate when a foreign action would disregard a statute of the forum that effectuates important public policies. *China Trade*, 837 F.2d at 37; *see also Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 931 n.73 (D.C. Cir. 1984) (holding that an anti-suit injunction is more appropriate when foreign action would be inconsistent with "a statute of specific applicability upon which the party seeking an injunction may have relied, and which is designed to effectuate important state policies."). That is precisely what VTB's Russian Action would do here.

### D.       JPMorgan Faces Immediate Harm Necessitating an *Ex Parte* TRO

Because VTB has already filed suit in Russia, JPMorgan is already suffering irreparable harm that justifies immediate relief in the form of a TRO pending adjudication of this Motion. JPMorgan also requires this relief on an *ex parte* basis because of the risk that VTB may already be or will shortly seek an injunction from the Russian court preventing JPMorgan from enforcing its rights under the forum selection clause once it learns of JPMorgan's lawsuit.

Article 248.2 of the Russian Arbitrazh (State Commercial) Procedure Code permits a

Russian party like VTB, which is subject to foreign sanctions, to seek its own anti-suit injunction

from a Russian court if foreign proceedings have been initiated against it, or there is evidence

that they will be initiated. *See* Kroll Decl. ¶¶ 8-9. This type of anti-suit injunction may be

obtained *ex parte*, before JPMorgan has an opportunity to assert any objections, including as to

jurisdiction in Russian courts, and any application for such an injunction must be considered by

Russian courts within one day. *Id.* VTB has sought and obtained this type of anti-suit injunction

against foreign litigation in at least one other case. *See* Kroll Decl. Ex. H; *see also* Cagney Decl.

Ex. H.

Accordingly, there is an immediate risk that, unless VTB is first enjoined by this Court

without notice, VTB could subject JPMorgan to an untenable conflict of laws situation before its

Motion for a preliminary injunction can even be heard. If VTB obtains an anti-suit injunction

from a Russian court first, JPMorgan would be forced to choose between forfeiting its

contractually-agreed forum or violating a Russian court injunction. The Court should not give

VTB the opportunity to put JPMorgan in that position when it has filed suit in a clearly

inappropriate forum, and instead should issue an immediate *ex parte* TRO, taking effect as soon

as VTB receives or has actual notice of it,[12] that requires VTB to discontinue its breaching

Russian Action until this Motion can be heard. Furthermore, to discourage VTB from trying to

use the Russian courts to tie JPMorgan's and this Court's hands, this Court should specify that

---

[12] VTB not only agreed in the Account Terms to waive its sovereign immunity, including "from service of notice, [and] injunction," Mainetti Decl. Ex. C § 17.7, but also agreed to a special arrangement for service, within the meaning of FSIA § 1608(b)(1), which will permit JPMorgan to serve VTB with notice of the complaint, this motion and the TRO promptly after it is issued. *Id.* § 13. *See Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design Off.*, 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001) (finding that a contractual provision governing "all notices" constituted a special arrangement for the service of process under the FSIA).

the TRO will automatically convert into a preliminary injunction if VTB fails to appear to oppose this Motion, and into a permanent injunction if VTB defaults on the complaint.

### E.     The Court Should Not Require Any Security

Given that JPMorgan simply seeks to enforce the parties' agreement and require VTB to bring its dispute in the proper forum, no security should be required for either a TRO or a preliminary injunction.  Federal Rule of Civil Procedure 65(c) only requires security "in an amount *that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c) (emphasis added). The Second Circuit has held that this phrase vests this Court "with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'"  *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)); *accord loanDepot.com, LLC v. CrossCountry Mortg., LLC*, 2023 WL 3884032, at *9 (S.D.N.Y. June 8, 2023) (declining to require security where defendant "has not convincingly established a likelihood of harm flowing from the issuance of a preliminary injunction").  Such is the case here: a TRO and preliminary injunction should issue only to protect this Court's "exclusive jurisdiction" over this dispute, and VTB will not suffer any harm by discontinuing the breaching claims in its Russian Action and pursuing any viable claims in this Court instead.[13]  For these reasons, the Court should not require JPMorgan to post any security.

---

[13] Even if there were any harm, a bond would not be necessary to secure any recovery from JPMorgan given its creditworthiness.  The U.S. sanctions against VTB may also make it difficult for JPMorgan to procure a bond for the benefit of VTB.

## **CONCLUSION**

For the foregoing reasons, the Court should grant an immediate *ex parte* TRO, effective as soon as VTB has actual notice of it, that requires VTB to discontinue all claims related to the Correspondent Account in the Russian Action until this Motion has been heard.  Upon consideration of this Motion, or if VTB fails to timely appear and oppose the Motion, the Court should convert the TRO into a preliminary injunction requiring VTB to discontinue all claims related to the Correspondent Account in the Russian Action pending resolution of this lawsuit.

DATED:   New York, New York
                April 18, 2024                             DAVIS POLK & WARDWELL LLP


                                                   By:   */s/ Michael S. Flynn*
                                                          Michael S. Flynn
                                                          Craig T. Cagney
                                                          450 Lexington Avenue
                                                          New York, New York 10017
                                                          Tel.: (212) 450-4000
                                                          michael.flynn@davispolk.com
                                                          craig.cagney@davispolk.com

                                                          *Attorneys for JPMorgan Chase Bank, N.A.*