UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JPMORGAN CHASE BANK, N.A.

        Plaintiff,

- against -

VTB BANK, PJSC,

        Defendant.

---

Case No. _____

DECLARATION OF KONSTANTIN KROLL

Pursuant to 28 U.S.C. § 1746, I, Konstantin Kroll, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a partner at Dentons Europe LLP, 1 Fleet Pl, London EC4M 7WS, UK. I am a Russian qualified advocate, a solicitor of the Senior Courts of England and Wales and an Irish solicitor (non-practising). I have over 25 years of transactional experience in the Russian market.

2. Until the end of 2022, I was based in Dentons' Moscow office leading Dentons' Russian Corporate and M&A practice. Since 1 January 2023, I relocated to the London office of the firm where I continue advising on various Russian law matters, with a particular emphasis on Russian regulatory and counter-sanctions measures and advising international companies on their exits from the Russian market. Prior to joining Dentons I was a partner at leading international law firms Orrick, Jones Day and Allen & Overy based in these firms' respective

Moscow offices since 1997. In Russia, I have been involved in numerous finance and corporate transactions in virtually all sectors of the Russian economy, and I have extensive experience advising on Russian law and regulatory matters. I have experience in applying for various regulatory approvals in Russia, including, inter alia, the Central Bank, the Federal Anti-Monopoly Service and the Government Commission for Strategic Investments. I have been involved in the working groups developing new legislation under the auspices of the State Duma (the lower chamber of the Russian parliament) and market participants' organizations such as, the Association of Russian Banks. I have advised clients and spoken publicly on the subject of Russian courts' ability to assume jurisdiction over disputes involving sanctioned entities on numerous occasions.

3. I am a fellow (FCIArb) of the Charted Institute of Arbitrators (CIArb) and a Vice President of the Russian Chapter of CIArb European Branch, a member of the ICC Russia Commission on Arbitration and ICC Russia recommended arbitrator, a member of the London Court of International Arbitration (LCIA) Users' Council, an accredited arbitrator at the Hong Kong International Arbitration Center (HKIAC's List of Arbitrators), the Asian International Arbitration Centre (AIAC), the Tashkent International Arbitration Centre (TIAC's panel of arbitrators), the Georgian International Arbitration Centre (GIAC's List of Arbitrators), the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC/MKAS), the Russian Arbitration Center at the Russian Institute of Modern Arbitration (RAC RIMA) and the Arbitration Center at the RSPP, the Russian Union of Industrialists and Entrepreneurs (International and Investment Disputes Panel). I am a member of the Academic Council of Russia's Higher School of Economics Masters Program "International Private Law and International Commercial Arbitration" and a visiting lecturer at the Higher School of Economics. My curriculum vitae is attached as Exhibit A.

4. My mother tongue is Russian, however, I have a good command of English which has allowed me to examine original documents in English and Russian (as applicable) and to prepare this Declaration in English.

5. I understand that Plaintiff JPMorgan Chase Bank, N.A. ("JPMorgan") holds assets belonging to Defendant VTB Bank, P.J.S.C. ("VTB") that have been blocked pursuant to U.S. sanctions laws, and that VTB has demanded that JPMorgan transfer the funds to it and earlier today commenced an action in Russian courts against JPMorgan and its affiliates following up on its pre-litigation demand with respect to the blocked assets. I have been asked to provide information relevant to JPMorgan's Motion for an *Ex Parte* Temporary Restraining Order and Preliminary Anti-Suit Injunction (the "Motion") based on my knowledge of Russian law and my experience with Russian courts.

6. In June 2020, in response to the various foreign sanctions issued against Russian entities, the Russian Federation passed amendments to the Russian Arbitrazh Procedure Code ("APC") granting Russian Arbitrazh courts (Russia's state commercial courts) exclusive jurisdiction over disputes involving sanctioned entities or disputes related to the foreign sanctions. The APC amendments permit an affected party to file a claim in the Russian Arbitrazh courts without regard to a forum selection clause in the parties' contract if the claimant seeks to avoid litigation in the contractually selected forum because of the foreign sanctions. Under Russian law, the Russian party must simply provide a written demand at least 30 days before commencing such an action.

7. After Russia commenced in February 2022 a so-called "special military operation" in Ukraine, which is internationally perceived as the "invasion" of Ukraine, various foreign countries expanded their sanctions against Russian entities. In response to these expanded sanctions, several sanctioned Russian financial institutions have utilized the

amendments to the APC to file suit in the Russian Arbitrazh courts against Western banks for withholding their assets in compliance with these foreign sanctions, just as I understand VTB has done to JPMorgan.  Several of these Russian entities have succeeded in obtaining judgments against Western banks such as Credit Suisse AG, Deutsche Bank AG, Citibank N.A., Goldman Sachs, ING Bank, and Euroclear Bank.  Attached as Exhibits B through G are true and correct copies of certain judgments entered in Russian courts in favor of various Russian financial institutions and against these Western banks, along with true and correct translations of the relevant excerpts thereof.  It has been publicly reported in Russia that some of these Russian entities have executed these judgments on the Western banks' assets in Russia in order to indirectly reclaim their blocked property, and in my opinion, all of the Russian entities obtaining such judgments intend to do the same.

8. The Russian parties have also sought and obtained judgments holding those Western banks' affiliates that are not holding the blocked property liable for that property.  For example, on April 9, 2024, the Russian Court of Cassation denied Citibank's appeal in *Sovcombank v. Citibank N.A., AO CB Citibank* (case No. A40-167352/2023), and upheld the lower courts' rulings that Citibank's Russian subsidiary was liable on Sovcombank's claims against its U.S. bank, Citibank, N.A., for recovery of its blocked property.  According to news reports in Russia, Sovcombank has secured the seizure of Citibank's Russian assets to execute on this judgment.

9. In addition to permitting suit in Russian Arbitrazh courts, the amendments to the APC also gave sanctioned Russian entities the ability to seek an anti-suit injunction prohibiting its counterparty from commencing suit in another forum, even if it is the contractually selected forum in the parties' agreement.  Specifically, Article 248.2 of the APC provides that a Russian party like VTB, which is subject to foreign sanctions, may seek an anti-suit injunction from a

Russian court if foreign proceedings have been initiated against it, or if there is evidence that they will be initiated. Importantly, the mere fact that the foreign proceedings have been or will be filed in a forum in a jurisdiction that had imposed sanctions would suffice to justify such an anti-suit injunction from the Russian court's perspective.

10. Indeed, in *PJSC Bank Otkritie v. Goldman Sachs* (Case No. A40-170819/2023), a Russian court issued an anti-suit injunction against Goldman Sachs merely because it appeared in the Russian litigation and disputed the Russian court's jurisdiction based on a forum selection clause requiring Otkritie to arbitrate the dispute in the United Kingdom. Although Goldman Sachs argued that it had not initiated and did not intend to initiate litigation abroad, the Russian court reasoned that Goldman Sachs had demonstrated that it did not respect the jurisdiction of the Russian court and there was a sufficient risk that it could initiate proceedings abroad in the absence an injunction. That ruling was affirmed by the Russian court of appeals and according to news reports in Russia, Otkritie has secured the seizure of Goldman Sachs' Russian assets to execute on this judgment.

11. Given that merely objecting that a Russian proceeding violates a forum selection clause has been held to be a sufficient basis to obtain an anti-suit injunction, in my opinion, if JPMorgan provided VTB with notice that it intended to file an action in New York and to apply for a temporary restraining order preventing VTB from litigating in Russia, that notice would be sufficient evidence for VTB to seek an anti-suit injunction against JPMorgan from a Russian Arbitrazh court under Article 248.2 of the APC.

12. Any application for an anti-suit injunction under Article 248.2 of the APC may be made on an *ex parte* basis, without notice to JPMorgan and without any opportunity for JPMorgan to assert any objections or defenses to the injunction. Article 93, Section 1.1 of the APC also states that a Russian court must consider an application for injunctive relief no later

than the next day after the date of receipt of the application by the court without notifying the parties.

13. Accordingly, it is my opinion that if JPMorgan had provided VTB with notice of its action and its Motion, VTB would be able to apply for and obtain an anti-suit injunction from a Russian Arbitrazh court quickly, without notice to JPMorgan, and before this Court could rule on JPMorgan's application for a preliminary injunction. JPMorgan would be obligated to comply with that injunction immediately as a matter of Russian law, and if JPMorgan violated the order by continuing its action in the United States, it could be subject to fines and potentially other penalties up to an amount equivalent to the total amount in dispute, plus VTB's costs.

14. VTB has sought and obtained these types of *ex parte* anti-suit injunctions before. For example, in *PJSC VTB v. VTB Europe SE* (Case No. A56-103943/2023), a Russian Arbitrazh court granted VTB an anti-suit injunction on an *ex parte* basis after foreign arbitration proceedings had been commenced against VTB in Hong Kong. Attached as Exhibit H is a true and correct copy of a decision, along with a true and correct translation of the relevant excerpts thereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **April 17, 2024**

_____
Konstantin Kroll