UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JPMORGAN CHASE BANK, N.A.,

    Plaintiff,

- against -

VTB BANK, P.J.S.C.,

    Defendant.

Case No. 1:24 Civ. 02924 (LGS)

# STATEMENT IN RESPONSE TO THE COURT'S JULY 2, 2024 ORDER

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Tel.: (212) 696-6000
Fax: (212) 697-1559

*Counsel for Defendant VTB Bank, P.J.S.C.*

## TABLE OF CONTENTS

FACTS ........................................................................................................................................... 1

    I.       The 7557 Account ..................................................................................................1

    II.      VTB Bank's Filing of the Russian Action and JPMorgan's Counter-Suit in this Court ..................................................................................................................2

    III.     The April 25 Russian Interim Anti-Suit Injunction and this Court's April 26 Preliminary Anti-Suit Injunction ........................................................................4

    IV.     Further Proceedings In this Court and In Russia, Including VTB Bank's Motion to Dissolve ................................................................................................5

VTB BANK'S STATEMENT OF POSITION AS TO SANCTIONS ........................................... 9

STATEMENT OF CURTIS IN RESPONSE TO THE JULY 2 ORDER ................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Cordius Tr. v. Kummerfeld*,
   2009 U.S. Dist. LEXIS 98889 (S.D.N.Y. Oct. 23, 2009) ......................................................... 10

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002) ..................................................................................................... 10

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ................................................................................................. 9, 10

*Spallone v. United States*,
   493 U.S. 265, 110 S. Ct. 625, 107 L. Ed. 2d 644 (1990) .......................................................... 10

*Weitzman v. Stein*,
   897 F.2d 653 (2d Cir. 1990) ..................................................................................................... 10

VTB Bank respectfully submits this statement in response to the Court's July 2, 2024 Order (the "July 2 Order"), ordering the parties to "provide the facts and law pertinent to any order of the Court *sua sponte* sanctioning VTB Bank, P.J.S.C. and/or its counsel for violating any orders in this case, including the April 26, 2024, preliminary injunction order."

**FACTS**

**I.    The 7557 Account**

In 1993, VTB Bank opened the correspondent banking account at issue here (the "7557 Account") to process U.S. dollar transactions, including U.S. dollar derivatives transactions. *See* May 29, 2024 Declaration of Dmitry Kirillov ("Kirillov Decl.") ¶¶ 6-7. The 7557 Account was opened with JPMorgan's predecessor entity, Chase Manhattan Bank N.A., which merged with JP Morgan Chase & Co. in 2000. Kirillov Decl. ¶ 6. The account was in regular use until 2022. *Id.*

On February 24, 2022, OFAC imposed full blocking sanctions on VTB Bank and required U.S. persons to block VTB Bank's accounts in the United States. *See* June 28, 2024 Supplemental Declaration of Dmitry Kirillov ("Kirillov Supp. Decl."). OFAC also issued General Licenses 10 and 11, which authorized a "wind down period" for transactions for VTB Bank until May 25, 2022. Kirillov Supp. Decl. During that wind-down period, U.S. persons were authorized to engage in certain "transactions ordinarily incident and necessary to exit operations, contracts, or other agreements that were in effect prior to the date of blocking...." OFAC FAQ 975, available at https://ofac.treasury.gov/faqs/975.

As of March 11, 2022, the 7557 Account held $439,468,033.12. On March 24, 2022, VTB Bank instructed JPMorgan to transfer the majority of the funds in the 7557 Account to VTB Bank's settlement counterparties outside Russia, consistent with OFAC's wind-down authorization. Kirillov Supp. Decl. ¶¶ 7-9. JPMorgan did not honor this instruction; instead, without responding

to VTB Bank's instruction, on July 15, 2022, JPMorgan sent a letter to VTB Bank stating that, effective August 15, 2022, the Treasury Services agreements would be terminated, VTB Bank's accounts would be closed, and any frozen funds "will continue to be held by J.P. Morgan … until such time as the applicable sanctions are lifted or all necessary authorizations are granted by the appropriate authorities allowing for the funds to be released…." April 18, 2024 Declaration of Denice Richarts ("Richarts Decl.") Dkt. 12, Ex. A.

By letters in February and March 2024, VTB Bank demanded that JPMorgan and the other JPMorgan Parties release the withheld funds in the 7557 Account, or provide "compensation of losses / compensation of damages related to unlawful withholding of funds." Richarts Decl. Ex. B. Those demands were refused.

## II.     VTB Bank's Filing of the Russian Action and JPMorgan's Counter-Suit in this Court

On April 17, 2024, VTB Bank filed an action in the Arbitrazh court of the city of Saint Petersburg and Leningrad region (the "Russian Action"), asserting claims under Russian tort law against JPMorgan and certain other parties (the "JPMorgan Parties") based on the withholding of its funds, and seeking release of the funds or compensatory damages. May 29, 2024 Declaration of Denis A. Almakaev ("Almakaev Decl.") ¶¶ 7-8. Simultaneously, VTB Bank filed an application for interim relief to preserve the status quo, seeking an order freezing assets of the JPMorgan Parties in Russia in the amount of the claim. *Id.* ¶ 14 and Ex. A.

The Russian Action was brought under Article 248.1 of the Russian Arbitrazh Procedure Code. *Id.* ¶¶ 23-29, Ex. A (VTB Bank's Statement of Claim) at 4.1. Under that statutory provision, as a matter of Russian law, the Russian court system has exclusive jurisdiction over disputes involving sanctioned persons such as VTB Bank, where (as here) there is no prior litigation in another forum involving the same parties and the same subject matter and arising out of the same grounds. *Id.* ¶¶ 23-29. Moreover, as a matter of Russian law, the exclusive jurisdiction

of Russian courts is mandatory and cannot be contracted out through contrary forum selection clauses. *Id.*

The next day, on April 18, 2024, JPMorgan filed a counter-suit before this Court seeking to enjoin the first-filed Russian litigation and for a declaratory judgment that the filing of the Russian Action was in breach of a forum selection clause contained in JPMorgan's standard form account terms. JPMorgan's complaint asserted that those account terms apply to the 7557 Account because "VTB opened the [7557 Account] by signing and accepting an Account Terms Acceptance Letter on May 9, 2008," and that "[o]nce VTB accepted the Account Terms, VTB and JPMorgan established the Correspondent Account, with an account number ending in *7557, at its branch in New York." Compl. ¶¶ 14-15. As explained in VTB Bank's briefing in support of its motion to dissolve (Dkt. 42, 50), that statement is inaccurate; in fact, the 7557 Account was opened in 1993, and JPMorgan has never identified any agreement by which VTB Bank agreed to the relevant "account terms" with respect to the 7557 Account.

Later on April 18, 2024, the Court held an *ex parte* hearing on JPMorgan's request for a temporary restraining order and an order to show cause for a preliminary injunction. The Court issued the temporary restraining order and order to show cause that day. The Court's temporary restraining order enjoined VTB Bank, "pending the hearing on JPMorgan's application for a preliminary injunction (i) from continuing the Russian Action and must discontinue it immediately." Dkt. 15. The Court scheduled a hearing on JPMorgan's motion for a preliminary injunction for April 25. *Id.* VTB Bank did not appear at the hearing.

On April 22, J.P. Morgan Bank International LLC, one of the JPMorgan Parties, filed a response in the Russian Action to VTB Bank's application for interim relief. On April 22, the court in the Russian Action granted VTB Bank's application for interim relief in part, denying

certain aspects of VTB Bank's application, such as the freezing of the rights to the jpmorgan.ru domain name, while granting VTB Bank's application to freeze certain assets of the JPMorgan Parties (the "April 22 Russian Freeze Order"). Almakaev Decl. ¶¶ 14-17.

### III. The April 25 Russian Interim Anti-Suit Injunction and this Court's April 26 Preliminary Anti-Suit Injunction

On April 23, VTB Bank filed a related action in the Arbitrazh court of the city of Saint Petersburg and Leningrad region (the "Related Russian Action") seeking to prohibit JPMorgan from initiating and/or continuing litigation against VTB in a foreign court pursuant to Article 248.2 of the APC. Almakaev Decl. ¶ 19. On April 25, the court in that Related Russian Action issued an interim anti-suit injunction prohibiting JPMorgan from "initiat[ing] and continu[ing] legal proceedings outside the Russian Federation … directly or indirectly related to the fact of causing harm to VTB Bank (PJSC) as a result of withholding, withdrawal, blocking of funds" and ordering JPMorgan to take measures "aimed at staying the proceedings" in this proceeding, pending further proceedings in Russia (the "Russian Interim Order"). Almakaev Decl. ¶¶ 21-30, Dkt. 29, Ex. B. The court scheduled a further hearing for June 5, 2024 to consider VTB Bank's application for a permanent anti-suit injunction. Almakaev Decl. ¶ 30.

On April 25, 2024, JPMorgan filed a letter with the Court attaching a proposed order for a preliminary injunction. Dkt. 18-1. On April 26, this Court issued its preliminary anti-suit injunction, stating that "[b]ased on JPMorgan's showing, VTB Bank agreed to be bound by the Account Terms when it opened the Correspondent Account." Dkt. 18-1 (JPMorgan's Proposed Order), at 1(b); Dkt. 19 (April 26 Injunction), at 1(b). The Court further found that, based on the jurisdictional and notice provisions of those account terms, it had jurisdiction over VTB Bank and that JPMorgan had adequately served VTB Bank. The April 26 Injunction enjoined VTB Bank "from continuing and maintaining the Russian Action" and ordered that VTB Bank "shall not

pursue any litigation or seek any relief against JPMorgan or any of its affiliates arising from or connected with the Correspondent Account in any jurisdiction other than in the federal or state courts of New York." April 26 Injunction ¶ 5. The April 26 Injunction further ordered VTB Bank to "immediately … [d]ismiss and discontinue the Russian Action" and to "Refrain from filing any further claims or seeking any other relief against JPMorgan or its affiliates that arises from or is connected with the Correspondent Account in any jurisdiction other than in the federal or state courts of New York." *Id.* ¶ 6.

### IV. Further Proceedings In this Court and In Russia, Including VTB Bank's Motion to Dissolve

On April 27, the court in the Russian Action, on the application of J.P. Morgan Bank International LLC, issued two orders clarifying and partially setting aside the April 22 Russian Freeze Order, ordering that the freezing injunction would not apply to the extent the money was to be used to pay salaries, tax obligations and other mandatory payments, and clarifying that it did not apply to funds belonging to clients of the JPMorgan Parties. Almakaev Decl. ¶¶ 17-18.

On April 25, April 28, May 6 and May 15, certain of the JPMorgan Parties filed applications in the Russian Action to revoke or modify the April 22 Russian Freeze Order in whole or in part. Additionally, on April 28, JPMorgan Chase Bank NA filed an application to dismiss the Russian Action for lack of jurisdiction. VTB Bank joined the May 6 application of JPMorgan Bank International LLC for modification of the Freeze Order, and opposed the other applications. On May 22, the Russian court granted JPMorgan Bank International LLC's May 6 application and denied the other applications to revoke or replace the Freeze Order. JPMorgan Chase Bank NA's application to dismiss for lack of jurisdiction remains pending.

On April 30, 2024, JPMorgan filed a letter with this Court, seeking a pre-motion conference to discuss its intention to file a motion to "suspend the proceedings," and stating that it was doing

so in order to "voluntarily comply" with the Russian Interim Order. Dkt. 21.

On May 7, VTB Bank, through its U.S. counsel Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), appeared before this Court, and filed a letter with the Court responding to JPMorgan's April 30 letter regarding suspension of the proceedings and requesting a briefing schedule to file a motion to dismiss and dissolve the April 26 Injunction for lack of personal jurisdiction, among other reasons. Dkt. 29. JPMorgan filed a letter on May 10, opposing VTB's Bank intended motion. Dkt. 33.

On May 15, 2024, the Court held a telephonic conference, at which VTB Bank appeared, through its U.S. counsel, Jonathan Walsh of Curtis. As Mr. Walsh explained on that conference, "we do not represent VTB in the Russian action, we have only been retained to act in the New York action and we have no role and have had no involvement in [the Russian] action." Transcript at 6:2-3 (Dkt. 35). VTB Bank did not oppose JPMorgan's request for a stay, but took the position that any stay of proceedings should necessarily include a stay of the April 26 Injunction. *Id.* at 6:21-23. The Court orally "grant[ed] the motion to suspend the proceedings, that does not include the injunction, the anti-suit injunction that is in place because I need briefing on that," *id.* at 8:3-6. The Court further granted VTB Bank permission to make a motion to dissolve the April 26 Injunction for lack of jurisdiction "or any other basis." *Id.* at 9:15-19. The Court also stated that it would not consider VTB Bank's motion unless "counsel will agree, on behalf of VTB, that responding to the motion to dismiss [or] to dissolve the preliminary injunction is not something they view as contrary to the Russian anti-suit injunction." Mr. Walsh explained that, "As I said, I have no involvement in that case. I certainly can inquire to VTB about that and come back to counsel with a response." *Id.* at 12:10-25.

On May 16, prior to any response from VTB Bank, the Court issued an order staying all

deadlines in this proceeding, but leaving the April 26 Injunction in effect. Dkt. 34. The Court's May 16 Order also set a briefing schedule for VTB Bank's motion to dissolve the preliminary injunction. *Id.* The May 16 Order further provided that "[b]y filing the motion to dissolve the injunction, Defendant agrees to construe Plaintiff's opposition the motion as permissible under, and not in violation of, the Russian court's anti-suit injunction." *Id.*

On May 21, 2024, VTB Bank requested that the Russian court in the Related Russian Action clarify the scope of its Interim Order, and specifically whether that order required JPMorgan to seek the suspension of the April 26 Injunction, under Russian procedural rules which permit a court to clarify, but not alter or expand upon, a prior order. On May 24, the Russian court issued an order denying that request, on the basis that addressing the suspension of the April 26 Injunction would constitute additional relief beyond its prior order. The Russian court also "note[d] that … as a result of the hearing held on May 15, 2024 in Case No. 1:24-CV-02924, VTB Bank was allowed to file an application to lift the Preliminary Injunction." May 28 Letter to the Court from Jonathan Walsh, Dkt. 39, Ex. B. VTB Bank, through its U.S. counsel Curtis, informed the Court of this ruling by letter on May 28. *Id.*

In accordance with the May 16 Order, on May 29, 2024, VTB Bank filed its motion to dissolve the preliminary injunction, on the basis, *inter alia*, of lack of personal jurisdiction and service. Dkt. 41. Among other arguments, VTB Bank argued that JPMorgan could not establish that the "account terms" on which it relies apply to the 7557 Account at issue, and that JPMorgan therefore could not establish a basis for jurisdiction over VTB Bank or show that service had been completed – and, furthermore, that because JPMorgan cannot show that the account terms apply to the 7557 Account, there is no applicable forum clause that could preclude VTB Bank from litigating in Russia. Dkt. 42.

On June 5, a hearing was held before the Russian court in the Related Russian Action on VTB Bank's application for a permanent injunction. The court denied JPMorgan's motion to leave VTB Bank's application for a permanent injunction unconsidered, but adjourned ruling on the permanent injunction for a further hearing on June 21, 2024.

On June 14, VTB Bank filed a writ of execution with the Russian Federal Enforcement Service, to begin the process of enforcing the April 22 Russian Freeze Order. On June 17 the bailiff executed the order to begin enforcement proceedings solely against JP Morgan Bank International LLC.

On June 20, JPMorgan filed its brief in opposition to VTB Bank's motion to dissolve. Among other things, JPMorgan argued that by opposing JPMorgan's motion in the Related Russian Action to leave its application for a permanent injunction unconsidered, VTB Bank was in violation of the Court's May 16 order. Dkt. 45, at 6.

On June 21, 2024, the Russian court issued a judgment, including a permanent anti-suit injunction requiring JPMorgan to dismiss the case before this Court (the "Russian Anti-Suit Injunction"). Dkt. 51, Ex. A. JPMorgan filed a letter on June 24, 2024, informing the Court of the judgment from the Russian court. Dkt. 49. Later that day, the Court filed an order (the "June 24 Order") requiring VTB Bank to "file an affidavit on the docket stating that it agrees to construe Plaintiff's opposition to the motion to dissolve the injunction as permissible under, and not in violation of, the Russian's court's anti-suit injunction by June 28, 2024" and ordering that "[i]f Defendant fails to do so, Defendant's motion will be denied as improperly filed in violation of the May 16, 2024, Order, and the injunction will remain in place." Dkt. 48.

VTB Bank filed its reply in support of the motion to dissolve the preliminary injunction on June 28, 2024. Dkt. 50. Concurrently, VTB Bank filed the declaration of Mr. Leonty Chernenko.

Dkt. 51. Mr. Chernenko confirmed that VTB Bank's understanding was that by filing the motion to dissolve, it had agreed pursuant to the Court's May 16 Order that it would not take the position that JPMorgan's opposition to the motion would constitute a violation of the Russian anti-suit injunction. For the avoidance of doubt, Mr. Chernenko further confirmed that VTB Bank would not take the position that JPMorgan's opposition to the motion would constitute a violation of either the Russian Interim Order or the subsequent permanent injunction. Mr. Chernenko noted, however, that VTB Bank reserves all other rights. *Id.*

On July 2, 2024, the Court issued an order requiring the parties to "provide the facts and law pertinent to any order of the Court *sua sponte* sanctioning VTB Bank, P.J.S.C. and/or its counsel for violating any orders in this case" and setting a hearing for July 23. Dkt. 53.

On July 4, 2024, VTB obtained a writ of execution in connection with the Russian Anti-Suit Injunction.

On July 9, 2024, JPMorgan filed a letter with the Court stating its intention to seek a pre-motion conference for a motion to "discontinue" this proceeding. Dkt. 54. On July 10, VTB Bank filed a letter with the Court in response requesting an adjournment of the July 12 date for its response to the Court's July 2 Order, in light of the uncertainties raised by JPMorgan's letter. Dkt. 55. On July 11, JPMorgan filed a further letter seeking a pre-motion conference to discontinue the proceeding. Dkt. 57.

## VTB BANK'S STATEMENT OF POSITION AS TO SANCTIONS

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*

*Info. Techs., Inc*., 369 F.3d 645, 655 (2d Cir. 2004) (quotations omitted). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp*., 277 F.3d 243, 250 (2d Cir. 2002). Civil contempt sanctions may be imposed "to secure future compliance with court orders and to compensate the party that has been wronged," but "[s]uch sanctions may not be imposed as a purely punitive measure." *Paramedics Electromedicina*, 369 F.3d at 657. In imposing coercive sanctions, a court has "broad discretion to design a remedy that will bring about compliance," *id.* However, "a court is obliged to use the least possible power adequate to the end proposed." *Cordius Tr. v. Kummerfeld*, 2009 U.S. Dist. LEXIS 98889, at *17-18 (S.D.N.Y. Oct. 23, 2009) (quoting *Spallone v. United States*, 493 U.S. 265, 276, 110 S. Ct. 625, 107 L. Ed. 2d 644 (1990)).

It is axiomatic that a court has "no power to grant an . . . injunction against a party over whom it has not acquired valid jurisdiction." *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990). For the reasons given in VTB Bank's memorandum and reply memorandum in support of its motion to dissolve, Dkts. 42, 50, VTB Bank respectfully submits that this Court lacks jurisdiction over it, and the Court's April 26 Injunction should therefore be dissolved, and the Court should not order any sanctions.

In addition, even if the Court were to conclude that it had jurisdiction to enter the April 26 Injunction, that injunction should nevertheless be dissolved going forward, because there is no substantive basis for it. For the reasons given in VTB Bank's briefing on the motion to dissolve, Dkts. 42 and 50, JPMorgan cannot show that the "account terms" apply to the 7557 Account at issue, and therefore cannot show that there is any applicable exclusive forum selection clause to enforce against VTB Bank. Therefore, even if the Court concludes that it had jurisdiction to enter

the April 26 Injunction, it would not be appropriate to order sanctions going forward, because there is no basis to coerce VTB Bank to comply with a forum selection clause that does not apply to the account at issue.

If the Court concludes that it has jurisdiction, then VTB Bank respectfully urges the Court take the following into account when considering any appropriate sanction.

First, there is at least substantial uncertainty regarding the jurisdictional and substantive basis for the April 26 Injunction. Indeed, as noted in VTB Bank's briefing on the motion to dissolve, Dkts. 42 at 2-4, 50 at 2, JPMorgan now acknowledges that the facts on which its application for that injunction were based were inaccurate, even though it contends that the Injunction is valid regardless.

Second, as VTB Bank has previously set forth in its prior briefing, under Russian law, Russian courts have exclusive jurisdiction over this dispute, and that jurisdiction is mandatory and cannot be contracted away; as a matter of Russian law, therefore, Russian courts have jurisdiction regardless of any contrary language in the account terms. Almakaev Decl. ¶¶ 23-29. VTB Bank may therefore be in breach of its fiduciary and statutory duties under the laws of its own state if it had not pursued the remedies available to it in the Russian Action. *Id.* ¶¶ 36-37.

Third, the Court should take into account considerations of comity and the risks of judicial encroachment on foreign policy involved in a *sua sponte* sanction of a foreign enterprise for litigating in its own courts.

Finally, VTB Bank requests an opportunity to respond more fully with respect to the implications of JPMorgan's July 9 and July 11 letters seeking to "discontinue" this proceeding. In light of JPMorgan's filings, it is unclear what the status of this case and any orders in it will be going forward, which may affect the propriety of any sanctions, or the basis for calculating those

sanctions if any are found to be appropriate. VTB Bank requests the opportunity to address those issues further in the context of any further proceedings as to JPMorgan's request.

**STATEMENT OF CURTIS IN RESPONSE TO THE JULY 2 ORDER**

The Court's July 2 Order refers to the possibility of an order "*sua sponte* sanctioning VTB Bank, P.J.S.C. and/or its counsel for violating any orders in this case." For the avoidance of doubt, Curtis confirms that, as stated at the May 15 status conference, Curtis represents VTB Bank only with respect to proceedings before this Court, which Curtis understands to be authorized by the April 26 Injunction ¶¶ 5-8 (excluding proceedings "in the federal or state courts of New York" from the scope of enjoined conduct), and by the Court's May 16 Order authorizing the filing of VTB Bank's motion to dissolve. Curtis has not participated in any respect in the Russian Action, Russian Related Action, or any other proceedings outside of this Court in connection with the 7557 Account. *See* July 12 Declaration of Jonathan Walsh, submitted as Exhibit A hereto.

Dated: July 12, 2024
New York, New York

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP


By:     */s/ Jonathan J. Walsh*
          Jonathan J. Walsh
          Jason Wright
          Felix Gilman
          Matthew W. Henry

          101 Park Avenue
          New York, New York 10178
          Tel.:    (212) 696-6000
          Fax:    (212) 697-1559
          Email:    jwalsh@curtis.com
                      jwright@curtis.com
                      fgilman@curtis.com
                      mhenry@curtis.com

          Attorneys for Defendant VTB Bank, P.J.S.C.